Opinion for the Court filed by Circuit Judge TATEL.
Concurring opinion filed by Circuit Judge EDWARDS.
TATEL, Circuit Judge.
The District of Columbia Lottery Control Board fired appellant, a career auditor, after more than ten years of service. Troubled by the Board’s treatment of him, appellant sued, alleging (1) that the Board fired him because he engaged in First Amendment-protected activity, (2) that the Board failed to afford him a hearing as required by the Fifth Amendment’s Due Process Clause, and (3) that Board supervisors acted in a manner sufficiently outrageous to constitute intentional infliction of emotional distress. Finding that the district court improperly dismissed appellant’s First and Fifth Amendment claims on the pleadings, we reverse and remand for further proceedings on those claims. And given that appellant conceded at oral argument that the district court lacked subject matter jurisdiction to resolve his intentional infliction of emotional distress claims against the Board and the District of Columbia, we vacate the judgment on those claims and remand with instructions to dismiss for lack of jurisdiction.
I.
As we must in reviewing a judgment on the pleadings, we view the complaint’s allegations in the light most favorable to the plaintiff. Peters v. Nat’l R.R. Passenger Corp., 966 F.2d 1483, 1485 (D.C.Cir.1992).
Appellant James A. Thompson Jr. began working for the District of Columbia Lottery Control Board (“the Board”) as an auditor in 1985. Moving up through the ranks over the next few years, he became Chief of Security in 1988. In January 1994, after a series of events not at issue in *285 this appeal, the Board reassigned him to the Audit Division.
In the course of his work as an auditor, Thompson made several allegations of fraud and misconduct against the Board’s on-line contractor, Lottery Technology Enterprise (LTE), and LTE’s subcontractor G-TECH. His supervisors repeatedly disparaged his reports and discouraged him from continuing his investigations. Undeterred, Thompson pressed on. Of particular note for this appeal, in a February 1996 memorandum to then-Acting Executive Director Dorothy Wade, Thompson alleged that LTE and G-TECH had retained some surplus computer equipment without paying for it. Several months later, in July, Wade gave Thompson an adverse performance evaluation, which Thompson viewed as retaliation for his allegations.
Also in July, Board Director Frederick King transferred Thompson to King’s “new security program.” The very next day, King informed Thompson that a reduction in force (RIF) would eliminate Thompson’s new position effective September 28. That same day, King and the Board’s General Counsel told Thompson they were placing him on administrative leave until September 18 because, they said, he “needed time to think.”
Thompson returned to work on September 18, and on September 28, the day the RIF was scheduled to become effective, the personnel office told him to return to work as if the RIF had no effect on him. Two days later, the Board gave Thompson a temporary assignment, and he continued working until December 18, at which point he left on sick leave followed by “Use or Lose Annual Leave.” The leave period lasted through January' 7, 1997, at which point Thompson informed King that for medical reasons he could not return to work. On February 26, Thompson received a personnel action form advising him that his temporary appointment had expired on January 29.
Thus out of work, Thompson filed suit in the U.S. District Court for the District of Columbia, bringing numerous claims against the Board and his individual supervisors. Thompson later agreed to dismiss several claims in exchange for defendants’ agreement not to seek summary judgment, leaving three claims before the district court: retaliation against Thompson on the basis of protected speech, failure to provide him with due process before terminating him, and intentional infliction of emotional distress. Defendants moved for judgment on the pleadings, and the district court granted the motion on all three counts. Thompson v. District of Columbia, No. 97-1015 (D.D.C. June 23, 2004); Fed.R.Civ.P. 12(c).
Thompson now appeals. Our review is de novo. Peters, 966 F.2d at 1485.
II.
By becoming a public employee, Thompson did not relinquish his First Amendment right to “comment on matters of public interest.” Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Nor did he sacrifice his right to bring a First Amendment claim by deciding “to communicate privately with his employer rather than to spread his views before the public.” Givhan v. W. Line Consol. Sch., Dist., 439 U.S. 410, 415-16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).
In evaluating Thompson’s First Amendment claim, we engage in a four-element inquiry. O’Donnell v. Barry, 148 F.3d 1126, 1133 (D.C.Cir.1998). We ask: (1) whether Thompson spoke on “a matter of public concern”; (2) whether the governmental interest in “promoting the efficiency of the public services it performs through its employees” outweighs Thomp *286 son’s “interest, as a citizen, in commenting upon matters of public concern, and the interest of potential audiences in hearing what [he] has to say”; (3) whether Thompson has demonstrated that his “speech was a substantial or motivating factor in prompting the retaliatory or punitive act”; and (4) whether the Board has demonstrated that, even without the protected speech, “it would have reached the same decision.” Id. (internal citations and quotation marks omitted). The first two inquiries are questions of law, while the last two are questions of fact usually left to the jury. Id.
The Board concedes that Thompson spoke on a matter of public concern (element one). Moreover, the Board neither disputes that Thompson’s complaint alleges sufficient facts for a jury to conclude that his “speech was a substantial or motivating factor” in adverse actions taken against him (element three) nor argues that “it would have reached the same decision” even without the protected speech (element four). Finally, the Board nowhere claims that purely job-related speech loses all First Amendment protection. See Garcetti v. Ceballos, — U.S. —, 125 S.Ct. 1895, 161 L.Ed.2d 188 (2005) (granting cert. on this question), granting cert. to 361 F.3d 1168 (9th Cir.2004). To be sure, it asserts that Thompson’s allegedly protected speech occurred during the performance of his job duties, but it does so only in the context of emphasizing the strength of the employer’s interest. Appellees’ Br. 24. This case therefore hinges on element two, requiring that we balance the government’s interests against those of Thompson and his “potential audiences.”
The district court concluded as a matter of law that the government’s “interest in maintaining an efficient workplace in which subordinate employees do not threaten relationships with important contractors and do not routinely disobey their superiors” outweighed Thompson’s First Amendment rights. Thompson, No. 97-1015, slip op. at 7 (D.D.C. June 23, 2004). The district court erred in drawing that conclusion from this limited record. As we have held, the balancing test calls for a fact-intensive inquiry: “When confronted with firings that implicate a public employee’s First Amendment rights, the courts are required to conduct an individualized and searching review of the factors asserted by the employer to justify the discharge.” Tygrett v. Barry, 627 F.2d 1279, 1282-83 (D.C.Cir.1980). The district court could not conduct this “searching review” based on this record, nor can we. Consisting only of the complaint, the record contains no evidence regarding the extent of Thompson’s alleged disruptiveness.
To be sure, in its appellate brief the Board suggests that Thompson’s inquiries were “unduly disruptive of the agency’s overall mission and its relationship with essential contractors.” Appellees’ Br. 24. But the Board, whose agreement to forbear seeking summary judgment limits our review to the complaint, points to nothing in that pleading to support its claim. Indeed, the Board’s insistence that a RIF— rather than anything Thompson did — motivated his dismissal undermines its contention that the need to end Thompson’s disruptive behavior outweighs the First Amendment interests at stake here. See Tygrett, 627 F.2d at 1286 (requiring court to focus review on reasons given by employer at time of discharge). If Thompson behaved so badly, why didn’t the Board terminate him for cause?
Also, Thompson’s allegation that LTE and G-TECH engaged in improper practices, which we must accept as true at this stage of the proceedings, indicates that he *287 had good reason to “threaten relationships” with them. Indeed, the unquestioning obedience that the Board appears to demand seems a poor attribute for an employee in Thompson’s position; to the contrary, we would have thought that to be diligent, auditors must ask difficult questions and conduct penetrating investigations. Cf. Hall v. Ford, 856 F.2d 255, 264-65 (D.C.Cir.1988) (affirming dismissal for failure to state a claim where plaintiff was high-level policy employee whose job required “loyalty at the expense of unfettered speech” (internal quotation marks omitted)).
In short, not only does Thompson’s complaint allege a First Amendment violation, but nothing in it corroborates the Board’s version of the story. The Board cannot prevail in a balancing test with no record evidence on its side of the scale.
Nothing in Koch v. City of Hutchinson, 847 F.2d 1436 (10th Cir.1988) (en banc), upon which the Board relies, convinces us to the contrary. There, the Tenth Circuit determined that the City, which had terminated a Fire Marshal for submitting a faulty report, had not violated the First Amendment. Id. at 1437-39. Koch differs from this case in two significant respects. First, the Tenth Circuit reviewed a judgment n.o.v., so it performed its balancing test with the benefit of a complete factual record. Id. at 1439. Second, much of the deterioration in the Fire Marshal’s relationship with his co-workers resulted from their losing confidence in him — a loss of confidence which the court found fully supported in the record. Id. at 1450-51. Here, by contrast, the Board has offered no evidence that Thompson performed poorly.
Accordingly, we will reverse the judgment on Thompson’s First Amendment claim and remand for the district court to develop a record sufficient to allow the “individualized and searching review” required by our case law.
III.
We turn next to Thompson’s Fifth Amendment claim. The Board concedes, as it must, that as a career employee Thompson had a significant interest in continued employment, and that “due process normally requires pre-termination proceedings of some kind prior to the discharge.” Wash. Teachers’ Union Local # 6 v. Bd. of Educ., 109 F.3d 774, 780 (D.C.Cir.1997) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). The Board does not argue that it afforded Thompson a pre-termination hearing. Instead, it claims that this case presents one of the “extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.” Id. (quoting United States v. James Daniel Good Real Prop., 510 U.S. 43, 53, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (internal citations and quotation marks omitted in Wash. Teachers’ Union )).
For its “valid governmental interest,” the Board cites the financial distress in which the District of Columbia found itself around the time the Board fired Thompson — financial distress that led to legislation giving District government agency heads absolute discretion “to identify positions for abolishment.” D.C.Code § 1-625.5(a) (1996 Supp.). The Board argues that because it terminated Thompson in a RIF for financial reasons, nothing it could have learned from a hearing would have changed its mind.
The Board cites Washington Teachers’ Union for the proposition that “the concept of procedural due process did not require pre-deprivation hearings before *288 execution of the 1996 modified RIFs.” Ap-pellees’ Br. 29. Thompson, however, unlike plaintiffs in Washington Teachers’ Union, contests the assertion that a RIF caused his discharge. As we have explained, moreover, “[w]ere we to look no further than the stated reason for an employee’s separation, not only could an agency cavalierly discharge [employees] under the guise of a ‘reduction-in-force’ but under that type of action it could also deprive them of all adverse action procedural rights.” Fitzgerald v. Hampton, 467 F.2d 755, 758-59 (D.C.Cir.1972). If the complaint in this case permits an inference that the RIF did not cause Thompson’s discharge, granting judgment on the pleadings would constitute precisely what Fitzgerald forbids: “lookfing] no further than the stated reason.”
In this case, the complaint’s allegations provide ample justification for questioning the Board’s stated reason. According to the complaint, King transferred Thompson to a new position one day and announced the RIF eliminating that position the next. The sparse record before us reveals no justification for moving Thompson into the doomed position, even if the District’s financial distress justified abolishing it. See Levitt v. D.C. Office of Employee Appeals, 869 A.2d 364, 366 (D.C.2005) (refusing to accept District’s characterization as RIF where employee was transferred to newly created position which was abolished a few weeks later). Moreover, nothing in the record indicates that the Board abolished the permanent position Thompson had held before the transfer to his short-lived new post.
Reductions in force are about terminating positions, not people. If, on remand, the district court determines that the Board sought to terminate Thompson rather than Thompson’s position — either as retaliation for First Amendment-protected activity or for some other reason' — ■ then the Board’s argument that RIFs require no pre-termination hearings becomes irrelevant. And once again, the Board finds itself in an awkward litigating position: Its claim that Thompson caused problems sufficient to outweigh his First Amendment rights undermines its contention that the Board targeted Thompson’s position rather than Thompson himself.
As we cannot determine on the basis of the complaint alone whether the Board had a governmental interest that justified depriving Thompson of a pre-termination hearing, we will reverse the judgment on the Fifth Amendment claim and remand for further proceedings consistent with this opinion.
IV.
This brings us finally to Thompson’s intentional infliction of emotional distress claim. The Board argues, as it did in the district court, that the Comprehensive Merit Personnel Act (CMPA), D.C.Code tit. 1, ch. 6, preempts this claim. At oral argument, Thompson conceded that the CMPA strips the court of jurisdiction over his claims against both the Board and the District of Columbia. See Robinson v. District of Columbia, 748 A.2d 409, 411 n. 4 (D.C.2000) (holding that CMPA preemption is jurisdictional). We will therefore vacate the judgment on those claims and remand with instructions to dismiss for lack of subject matter jurisdiction. See Utility Air Regulatory Group v. EPA, 320 F.3d 272, 277 (D.C.Cir.2003) (requiring resolution of jurisdictional issues before turning to the merits).
As to the two individuals Thompson also sued, Thompson’s appellate brief describes them as “not party to appeal,” Appellant’s Br. at i, and Thompson never served them, see id. at 33. Thus, neither the merits of those claims nor the question whether the *289 district court had subject matter jurisdiction over them is before us.
V.
Because the complaint’s allegations suffice to state both First and Fifth Amendment claims, we reverse the judgments on those claims and remand for further proceedings consistent with this opinion. And because the district court lacked subject matter jurisdiction over the common-law claims against the District and the Board, we vacate the judgment on those claims and remand with instructions to dismiss for lack of subject matter jurisdiction.

So ordered.