Charles E. PITT, Appellant,

v.

DISTRICT OF COLUMBIA DE-PARTMENT OF CORREC-TIONS, Appellee.

No. 06–CV–1006.

District of Columbia Court of Appeals.

Argued Jan. 8, 2008.

Decided Aug. 14, 2008.

---

Christopher A. Sterbenz, Vienna, VA, for appellant.

Mary L. Wilson, Senior Assistant Attorney General, with whom Linda Singer, Acting Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General at the time the brief was filed, were on the brief, for appellee.

Before REID and GLICKMAN, Associate Judges, and SCHWELB, Senior Judge.

REID, Associate Judge:

Appellant, Charles E. Pitt, challenges the Superior Court's order affirming a decision by the Office of Employee Appeals ("OEA") that dismissed his appeal for lack of jurisdiction. On remand from our decision in *Pitt v. District of Columbia Dep't of Corrections,* 819 A.2d 955 (D.C.2003) (*Pitt* I), the OEA concluded that Mr. Pitt "was prevented by the terms of the labor agreement from appealing the final Agen-

cy decision" to the OEA. Mr. Pitt claims the unrebutted and substantial evidence in the record establishes that the Fraternal Order of Police ("FOP"), the collective bargaining unit for correctional officers, and the District of Columbia Department of Corrections ("Department" or "DOC"), were not parties to the labor agreement, which precluded his appeal to the OEA. Mr. Pitt also claims that the DOC is estopped from arguing that he may not appeal his firing to the OEA, because the DOC had taken a contrary position in subsequent cases. We affirm.

## FACTUAL SUMMARY

We need not repeat the full factual and procedural background of this case as set forth in *Pitt* I. Therefore, we highlight only enough of the earlier background to state the context for this decision. Teamsters Local 246 ("Teamsters") was the exclusive bargaining representative for all employees of the Department in Mr. Pitt's personnel classification. The 1986 collective bargaining agreement between the Teamsters and the Department provided for a five-step grievance procedure as the "exclusive appeal mechanism,"[1] for employees who wished to contest disciplinary actions, including terminations. The agreement, which was executed in July 1986 and extended until September 30, 1987, included an option for renewal by either party for three years and "[t]herefore by its terms the agreement expired no later than 1990." *Id.* at 956. In 1993, the Department employees voted to oust the Teamsters in favor of the FOP, and in 1994 the Public Employee Relations Board ("PERB") certified the FOP as their new representative. *See id.*

Mr. Pitt was a corrections officer with the Department until March of 1997, when

---

1. *Pitt* I *supra,* 819 A.2d at 956.

he was terminated following his arrest on February 11, 1997 in Prince George's County, Maryland for possession of crack cocaine. *Pitt* I, *supra*, 819 A.2d at 955. Although the charges against Mr. Pitt were eventually dismissed, the Department decided to "terminate him in reliance on a report of the arresting officer." *Id.* at 956. The March 1997 notice of termination informed Mr. Pitt of his " 'right to appeal this decision in accordance with the Labor Management Agreement' and instructed him to direct any questions about his appeal rights to the FOP." *Id.* Mr. Pitt appealed his termination by following the first four grievance steps outlined in the 1986 collective bargaining agreement. The first four steps of this grievance procedure took place within the Department, culminating in an appeal to the Director. If the grievance remained unresolved, the fifth step provided that the union had the option of pursuing either arbitration or mediation on Mr. Pitt's behalf. In July 1997, the Director upheld Mr. Pitt's termination. The FOP did not pursue mediation or arbitration. Mr. Pitt appealed the Director's decision to the OEA.

The Department moved to dismiss the appeal for lack of jurisdiction, arguing that Mr. Pitt's exclusive remedy under the 1986 collective bargaining agreement was to have FOP submit his grievance to arbitration or mediation. *Pitt* I, *supra*, 819 A.2d at 955–56. Mr. Pitt filed an opposition, maintaining that the collective bargaining agreement had expired; the Teamsters had been supplanted by the FOP in 1994; and the FOP disavowed the arbitration/mediation procedure and advised him to take his grievance to the OEA.[2] *Id.* at 957. On June 15, 2000, the OEA administrative law judge granted the Department's motion to dismiss, concluding that the FOP and the Department had adopted the expired 1986 collective bargaining agreement and that the "exclusive grievance procedures set forth in the agreement precluded Mr. Pitt from appealing his termination to the OEA." *Id.* at 957. In response to his petition for review, the Superior Court affirmed the agency decision, concluding that it was supported by substantial evidence. Mr. Pitt noted an appeal to this Court.

In *Pitt* I, we determined that Mr. Pitt had made a *prima facie* showing, which "demonstrated that the collective bargaining agreement that supposedly precluded his appeal, had expired."[3] *Id.* at 958. Acknowledging that there were "indications that the FOP, as the Teamsters' successor, and the Department of Corrections, were continuing to act as if they were performing under the 1986 agreement," we expressed concern with the "Department's representation to the PERB that after 1990 its employees had to appeal to OEA rather than arbitrate."[4] *Id.* We reasoned that the Department's disavowal of the arbitration and mediation provisions may mean that the "exclusive grievance procedure" was not in effect after 1990. *Id.* And during

2. Mr. Pitt did not, however, submit an affidavit or other evidence supporting his contention that the FOP advised him to appeal to the OEA. *See id.*

3. *See* DCMR § 629.2 (2003).

4. In a matter before the PERB in 2000, the FOP filed an unfair labor practices complaint in response to the Department's notice of "its intent to terminate the collective bargaining agreement between the Department [ ] and its employees." *Id.* at 957. "In the course of responding to the complaint, the Department [claimed] [ ] that it had no contractual duty to arbitrate employee grievances after 1990, when the agreement expired. Instead, *the Department asserted, its employees had the right after 1990 to appeal unresolved grievances to the OEA." Id.* (emphasis added).

the appeal before us in *Pitt* I, the Department proffered, for the first time, that its representations before the PERB were erroneous, and that documentary evidence existed showing that the FOP adopted the 1986 agreement and that it was in effect until well after 1997. *Id.* at 959. Since Mr. Pitt never had the opportunity to confront this evidence before the OEA, we vacated the OEA's decision and remanded the case for further proceedings to determine whether the 1986 collective bargaining agreement continued in effect at the time of Mr. Pitt's appeal. *Id.* at 956, 959.

On remand, the OEA concluded that it did not have jurisdiction over Mr. Pitt's appeal because the evidence in the record "demonstrate[d] that the Teamsters' labor agreement from 1986 was still in effect." In support of its conclusion, the OEA relied on the following evidence:

(1) [Mr. Pitt] pursued the appeal of his termination through the five-step grievance process, (provided in the 1986 labor agreement between the Teamsters and the Department), including submission of a written request, dated July 16, 1997, to the FOP to arbitrate the case; (2) an MOU [Memorandum of Understanding] dated May 20, 1997, between the FOP and the Department, which reflects its intention, on its face '... not to change the contract but rather to provide a process to manage the backlog of grievable matters under the contract;' and (3) no evidence that the requirements of said MOU were followed in order to properly file an appeal with [the] OEA if such evidence is considered dispositive of the jurisdictional issue herein.

The OEA also referenced the 1997 affidavit of the FOP's Vice Chairman, Carlton Butler, noting that "the parties were not moving forward to resolve existing grievances (in Mr. Butler's words '[T]o break this logjam ...') and developed a procedure to do so." The OEA dismissed Mr. Pitt's appeal, and he again appealed to the Superior Court.

The Superior Court affirmed OEA's decision, concluding that it was supported by substantial evidence. The court cited "a memorandum dated May 25, 1993, from the District of Columbia Office of Labor Relations and Collective Bargaining ....[which stated] that the Teamsters local and the DOC were negotiating a new agreement, and that in the meantime they would continue to operate under the 1986 agreement." The court also noted a June 30, 2000 letter sent from the District of Columbia to the FOP stating that "it intended to terminate their collective bargaining agreement effective September 30, 2000." The court reasoned that although the letter "[did] not prove that the agreement being terminated had been in effect in 1997, or that it is even the same agreement" it nevertheless "suggest[ed] that the 1986 agreement (still alive in 1993) had continued to 2000." Ultimately, the court concluded that the 1997 MOU, submitted by Mr. Pitt, was "decisive" because "it demonstrated that [the grievance] procedures were still in effect and that the parties felt the need to modify, but not discard them." The court recognized that the express purpose of the MOU was "not to change the contract but rather to provide a process to manage the backlog of grievable matters under the contract." The court found that "[t]he agreed-to procedure allowed an employee whose case had been reviewed but not decided within a certain time to file an appeal with the OEA—but only if the parties had executed a written statement of non-settlement." The court stated that "[t]here [was] no evidence in the record that Mr. Pitt complied with this requirement by submitting such a statement."

## ANALYSIS

### Substantial Evidence: Adoption of the 1986 Labor Agreement

■ Mr. Pitt argues that the evidence in the record is "insufficient to establish that the FOP and the DOC intended for the Teamsters Union contract to continue 'in force after 1990, at least so far as its arbitration and mediation provisions were concerned.'" He maintains that the "evidence of record, taken as whole," establishes that: (1) "[n]o employee firing cases were arbitrated between the FOP and DOC in the entire period surrounding [his] case," (2)[t]he President and Vice President of the FOP believed that [his] case was not required to be submitted to binding arbitration under the Teamsters['] contract, but should be heard by the OEA," and (3) the "DOC has argued in multiple tribunals other than the [OEA] that corrections officers were not entitled to arbitration or other remedy, but were required to appeal their firings to the OEA." Mr. Pitt contends that the Superior Court "averted its eyes" from this evidence "as a whole" and instead erroneously relied on one document—the 1997 MOU between FOP and DOC.

■ "We review the Superior Court's affirmance of an administrative agency ruling in the same manner as if the ruling came to us directly from the agency." *Pitt* I, *supra*, 819 A.2d at 958 (quoting *Hahn v. University of the District of Columbia*, 789 A.2d 1252, 1256 (D.C.2002)). "In such a review, this court examines the administrative record to determine if there has been procedural error, if there is substantial evidence in the record to support the action of the agency, or if the action is in some manner otherwise arbitrary, capricious, or an abuse of discretion." *Id.* "Where the government employees are covered by a collective bargaining agreement that includes exclusive grievance procedures, those procedures may supersede otherwise available statutory provisions for OEA review." *Id.* at 958 (citing *District of Columbia Metro. Police Dep't v. Pinkard*, 801 A.2d 86, 91 (D.C.2002)). Similarly, "[a]n expired collective bargaining agreement may continue in effect if the parties continue to act as if they are performing under it." *Id.* at 958 (citing *Hahn, supra*, 789 A.2d at 1258–59). Alternatively stated, "[w]hen a contract lapses but the parties to the contract continue to act as if they are performing a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby, or both parties mutually intend that the terms not survive." *Id.* (citing *Hahn*, 789 A.2d at 1258).

On remand, the sole issue decided by the OEA and the Superior Court was whether the OEA had jurisdiction over Mr. Pitt's appeal. *See generally Pitt* I, 819 A.2d at 958–59. We conclude that substantial evidence supports the OEA's remand decision. In May 1997, the FOP and the Department executed an MOU to address "the current backlog of current *arbitration* cases." (Emphasis added). The MOU stated:

> Any backlogged arbitration case, which has been reviewed and discussed but not settled pursuant to time-tables set forth in the Joint Systematic Case Review Agreement, and any amendments thereto, shall require the [Department] and [FOP] to execute a written Statement of Non–Settlement; and within twenty (20) days of the execution date of any Statement of Non–Settlement, the case involved may be filed as an appeal with the Office of Employee Appeals by the [FOP].

*The purpose of this MOU is not to change the contract but rather to provide a process to manage the backlog of grievable matters under the contract.* (Emphasis added).

An employee's grievance reaches the arbitration stage only after the employee follows the first four steps of the grievance procedure outlined in the 1986 labor agreement. When the Department decided to terminate Mr. Pitt, it sent him a notice informing him of his "right to appeal [the] decision in accordance with the Labor Management Agreement" and Mr. Pitt, in accordance with the agreement, appealed his termination by following the first four grievance steps. In an affidavit submitted to the OEA, the Vice Chairman of the FOP in 1997 explained that the MOU was negotiated to "allow employees to file their unresolved grievances before the Office of Employee Appeals (OEA)," and noted that even though the labor management agreement negotiated by the Teamsters had expired, "[s]till, the FOP filed grievances with the DOC." In addition, we agree with the OEA and the trial court that the June 30, 2000 letter from the District of Columbia to the FOP, as well as the MOU and the actions of the parties, suggest that the

1986 labor agreement was still in effect in 2000. The letter titled "Re: Termination of Collective Bargaining Agreement between the District of Columbia and the Fraternal Order of Police/DOC," states:

Please be advised that the collective bargaining agreement between the District of Columbia Department of Corrections and the employees of the Department of Corrections expired on September 30, 1988. This letter serves as notice that the District therefore intends to terminate the Agreement, effective September 30, 2000.

Although the 1986 collective bargaining agreement expired, the language of the MOU, and the conduct of Mr. Pitt, the FOP and the Department illustrate that they continued to act "as if they were performing under it." *Pitt I, supra,* 819 A.2d at 958 (citing *Hahn, supra,* 789 A.2d at 1258–59), thereby foreclosing Mr. Pitt's appeal to the OEA. *Id.* at 958 (citing *Pinkard, supra,* 801 A.2d at 91). On this record, we conclude that the OEA's decision to dismiss Mr. Pitt's appeal for lack of jurisdiction was supported by substantial evidence, and the trial court properly affirmed that decision.[5]

5. Mr. Pitt claims that the Department was "equitably estopped" from arguing that he could not appeal his firing to the OEA, because the Department had argued before the Public Employee Relations Board ("PERB") that it was under no obligation to arbitrate employee firings and that its employees were required after 1990 to appeal their terminations to the OEA. The District acknowledges that "the Department [ ] contradicted itself about the existence of a binding agreement in its 2001 PERB filing," but declares that "the District has since taken one consistent position that the [1986] agreement remained binding until 2000." At the outset, we note that neither the OEA nor the Superior Court addressed this estoppel claim, and Mr. Pitt has not argued that the OEA's decision should be reversed on that ground. At any rate, we are not persuaded that Mr. Pitt

has a valid estoppel argument. *See Thoubboron v. Ford Motor Co.,* 809 A.2d 1204, 1213 (D.C.2002) ("the party seeking to invoke the estoppel ... must have been an adverse party in the prior proceeding, must have acted in reliance upon his opponent's prior position, and must now face injury if a court were to permit the opponent to change positions.") Indeed, as discussed *infra,* Mr. Pitt challenged his termination through the five-step grievance procedure outlined in the 1986 labor agreement. Moreover, Mr. Pitt himself submitted (1) the MOU, which noted that its purpose was "not to change the contract but rather to provide a process to manage the backlog of grievable matters under the contract," and (2) the affidavit of the Vice President of the FOP wherein he stated, that in 1997, even though "there was no labor agree-

*Due Process*

Mr. Pitt claims that he has been denied due process of law, because "all non-probationary, career District employees are entitled to appeal their terminations to the OEA." He argues that due process requires that his termination appeal be heard before a "neutral decision maker," which he concedes "may either be the OEA or an impartial arbitration panel sitting pursuant to a labor management agreement." He maintains that if we conclude that the FOP and the Department "intended to have an exclusive arbitration procedure which prevents employee appeals to the OEA," we must "remand [his] case to the Department with an order to convene an arbitration panel to hear [his] case."

The fifth step of the grievance procedure, outlined in the 1986 Labor Management Agreement, states:

g. *Step 5:* If the grievance remains unresolved, the Union fifteen (15) days after receipt of the Director's response shall notify the Director and the D.C. Office of Labor Relations and Collective Bargaining (OLRCB) in writing whether the Union intends to request arbitration or request that the Department agree to utilize the Grievance Mediation procedure described below on behalf of the employee(s).

Under this procedure, the FOP had the discretion to pursue arbitration to resolve Mr. Pitt's grievance. However, because "the [Department] refused to arbitrate any cases," on May 20, 1997, the FOP and the Department executed the MOU to "expeditiously abat[e] the current backlog of current arbitration cases." Under this new procedure, the FOP had the discretion to pursue and execute a "written Statement of Non–Settlement" with the Department,

which would have allowed the FOP to file Mr. Pitt's case as an appeal with the OEA. The record does not reflect whether (1) Mr. Pitt had notice of the May 20, 1997 MOU and the "written Statement of Non–Settlement" procedure, (2) whether Mr. Pitt asked the FOP to pursue a written Statement of Non–Settlement with the Department on his behalf; and (3) whether the FOP was unwilling to do so. After the final decision on his termination, on July 16, 1997, Mr. Pitt appealed the decision of the Director directly to the OEA and also sent a letter formally requesting that the FOP submit his case to "an arbitration panel or other appellate authority."

In *Board of Trustees, Univ. of the District of Columbia v. Myers,* 652 A.2d 642, 646 (D.C.1995), we held that "if [a] union is unwilling to take [an employee's grievance] to arbitration, the employee's only remedy at that point is a complaint against the union filed with the Public Employee Relations Board (PERB), requesting an order compelling the union to arbitrate." *See also District of Columbia v. Thompson,* 593 A.2d 621, 626 (D.C.1991) ("Employees dissatisfied with their union's representation may appeal to PERB, and then seek judicial review in Superior Court, if they have a basis for alleging improper conduct."). The "PERB has the power, under D.C.Code § 1–605.2(3), to order the union to pursue arbitration of an employee's claim against the employer if the PERB concludes that the union's refusal to arbitrate amounted to an unfair labor practice." *Myers, supra,* 652 A.2d at 646. Here, although the MOU gave the FOP discretion to decide whether to pursue and execute a written Statement of Non–Settlement with the Department, "this discretion is limited by the union's duty to represent all employees fairly in the enforcement of the collective bargain-

ment between the FOP and the DOC," "[s]till the FOP filed grievances with the DOC."

ing agreement," and its "obligation ... to investigate a grievance in good faith." *Id.* (citations omitted). Any obstacle that Mr. Pitt had faced in having his claim reviewed by a "neutral decision maker," could only be resolved in a claim against the FOP before the PERB. *See id.*

Accordingly, for the foregoing reasons, we affirm the decision of the OEA.

*So ordered.*