# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 2, 2008      Decided December 23, 2008

No. 07-7121

SALLIE L. JOHNSON,
APPELLANT

v.

THE DISTRICT OF COLUMBIA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 04cv00250)

———

*Mattie P. Johnson* argued the cause for the appellant.

*Holly M. Johnson*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for the appellee District of Columbia. *Peter J. Nickles*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, were on brief. *James C. McKay, Jr.*, Senior Assistant Attorney General, entered an appearance.

Before: HENDERSON, RANDOLPH and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Sallie L. Johnson, a former officer in the Youth Services Administration of the District of Columbia Department of Human Services (DCDHS), appeals the district court's dismissal of her complaint against the District of Columbia (D.C. or District) for wrongful termination and denial of due process in violation of the Fifth Amendment to the United States Constitution. *Johnson v. District of Columbia*, 244 F.R.D. 1 (D.D.C. 2007) (*Johnson II*). The district court dismissed the action on the ground that Johnson failed to exhaust her administrative remedies as required by the District Comprehensive Merit Personnel Act (CMPA), D.C. Code §§ 1-601.01 *et seq. See Johnson v. District of Columbia*, 368 F. Supp. 2d 30, 51-52 (D.D.C. 2005) (*Johnson I*). We conclude that Johnson was required to pursue her remedies under the CMPA and under the collective bargaining agreement (CBA) between her union and the District—and, in particular, to petition the District Public Employee Relations Board (PERB) for relief when the District refused to arbitrate her grievance. Because she failed to do so, we affirm the dismissal.

## I.

On November 12, 2001, three youths escaped from the Oak Hill Youth Center while Johnson was on duty. The following day, Johnson was placed on administrative leave pending an investigation of the escape. On December 13, 2001, the Deputy Administrator of Secure Facilities presented Johnson with a fifteen-day advance notice of proposal to remove her from her position, which referenced nine "attachments" that were not, as it turned out, attached. Compl. ¶ 21, *Johnson v. District of Columbia*, No. 04-cv-00250 (D.D.C. Feb. 17, 2004) (Compl.). Working with her union, the Fraternal Order of Police (FOP), Johnson attempted to obtain the missing attachments from DCDHS and finally succeeded on January 22, 2002.

A DCDHS hearing examiner reviewed the proposal to remove and issued an Administrative Review on March 8, 2002. Administrative Review, Adverse Personnel Action, CMPA No. 1022 (DCDHS Mar. 8, 2002). The hearing examiner concluded that, given Johnson's long employment history and favorable evaluations, she "should not receive the harsh penalty of removal." *Id*. at 10. Later the same day, however, the DCDHS Director issued a notice of final decision "sustain[ing] the proposal to remove [her] from [her] position for 'Inexcusable Neglect of Duty.' " Letter from Carolyn W. Colvin, Director, DCDHS, to Sallie Johnson (Mar. 8, 2002). Johnson's removal was effective March 15, 2002.

On March 27, 2002, Johnson's union commenced a grievance procedure on Johnson's behalf pursuant to the CBA negotiated in 1994 between the District and the American Federation of Government Employees, which was then the collective bargaining representative of Johnson's bargaining unit. *See* Master Agreement Between Am. Fed'n of Gov't Employees and Gov't of the District of Columbia (1994 CBA). The 1994 CBA offers an aggrieved employee the option to pursue either the statutory or the CBA grievance procedure. 1994 CBA art. 24, § 1, ¶ 3. The 1994 CBA procedure requires that the aggrieved employee and his union submit a written grievance to the head of the agency involved within 45 calendar days of the final notice of adverse action and that the agency respond within 15 working days. *Id*. art. 30, § 5, ¶ A. If the grievance is not "satisfactorily settled" at that stage, "the Union can invoke arbitration." *Id*. art. 30, § 5, ¶ B. Following an arbitration award, "[e]ither party may submit the award for reconsideration by filing an Arbitration Review Request with the [PERB] within the time prescribed by law and regulation." *Id*. art. 30, § 8, ¶ 5.

In a letter dated June 19, 2002 and addressing Johnson's grievance, the District informed FOP General Counsel Harold

M. Vaught that it "declined to participate in any further arbitrations with the [FOP] until such time as the [FOP] and [DCDHS] have, through negotiations, reached some agreement to arbitrate grievances." Letter from Mary E. Leary, Attorney, D.C. Office of Labor Relations and Collective Bargaining, to Harold M. Vaught, General Counsel, FOP/DCDHS Labor Committee (June 19, 2002). In November 2002, because her union representative "was not returning her calls," Johnson contacted Vaught about the status of her grievance. Compl. ¶ 41. Vaught informed her he was no longer FOP General Counsel and referred her to her union representative who, he said, had all of her files. Between November 2002 and January 2003 Johnson attempted repeatedly but unsuccessfully to contact her union representative.

In January 2003, the new FOP General Counsel informed Johnson that an arbitrator had issued a favorable arbitral award but that the District refused to comply with it. On August 25, 2003, however, the FOP General Counsel told Johnson's counsel that her grievance had in fact been "tied up in a dispute over whether the District has an obligation to arbitrate her discharge grievance" under the 1994 CBA, which the District maintained was not in effect. Compl. ¶ 49; *see* 1994 CBA at 46-47. In October 2003, Johnson learned that, while grievances from other members of her bargaining unit had gone to arbitration, hers had not.

On February 17, 2004, Johnson filed this action against the District and individual District officials, alleging causes of action for (1) violating her right to procedural due process by failing to provide timely notice of the proposal to remove and by refusing to arbitrate her grievance, (2) defamation, (3) wrongful termination and (4) intentional infliction of emotional distress. The district court subsequently dismissed the action against the District and against the individual defendants in their official capacities. The court concluded that Johnson "d[id] not allege

any facts in her complaint to rebut the District's contention that Johnson's arbitration is merely 'on hold' while the dispute over the validity of the arbitration clause in the collective bargaining agreement is resolved." *Johnson I*, 368 F. Supp. 2d at 35. Thus, the court reasoned, "Johnson's arbitration remedy has yet to be finalized, either by the completion of an arbitration or the District's final refusal to arbitrate" and "[u]ntil such time as one of these two 'finalizing events' occurs, Johnson's administrative remedies for the claims she asserts here simply cannot have been exhausted." *Id.* The court further noted that "even if . . . the District refuses to abide by a valid term of the collective bargaining agreement, it is likely that the plaintiff could seek [to] petition the PERB for relief." *Id.* at 50 n.8.

On November 22, 2005, Johnson filed motions to compel the District to arbitrate, to stay the action pending resolution of the motion to compel and to amend the complaint to allege that arbitrators in two other cases had determined the 1994 CBA's arbitration procedure was binding on the District (one of whom was upheld by the D.C. Superior Court) but that the District "still refuses to participate in arbitration of [her] grievance." *Johnson II*, 244 F.R.D. at 8 (citing Proposed Mot. to Amend Compl. ¶¶ 39-40, *Johnson v. District of Columbia*, No. 04-cv-00250 (D.D.C. Nov. 22, 2005)). The court construed the motion to amend as an "attempt[] to plead futility by alleging that the dispute has been resolved and that the District still refuses to engage in arbitration," *id.*, and concluded that the motion itself was futile because "the claims against the District in Johnson's amended complaint suffer from the same flaw that fatally afflicted her original complaint," namely, they do not demonstrate either "administrative exhaustion through completion of the grievance process" or "that resort to administrative remedies would be futile." *Id.* at 7-8. The court noted that " 'appeal to the PERB on the grounds that the District's refusal to abide by a valid collective bargaining agreement constitutes an unfair labor practice' is Johnson's

'appropriate remedy' at this stage." *Id*. at 9 (quoting *Johnson I*, 368 F. Supp. 2d at 45 n.5). Accordingly, the court denied all three motions as to the District and dismissed the action in its entirety. *Id*. at 10. Johnson filed a notice of appeal on August 16, 2007.[1]

## II.

Johnson contends the district court erroneously dismissed her action against the District because she was not required under District law to exhaust her remedies by petitioning the PERB for relief. We conclude the district court properly dismissed the action because Johnson failed to exhaust the remedy she elected pursuant to D.C. Code § 1-616.52(e)—namely the CBA grievance procedure—which became her exclusive remedy under the CMPA and District case law.

The CMPA, which governs personnel management, provides that an employee may, alternatively and at his discretion, (1) "appeal from a removal . . . to the Office of Employee Appeals'' (OEA), D.C. Code § 1-616.52(b), or (2) use any grievance procedure set out in an applicable CBA "but not both," *id*. § 1-616.52(e). If an employee chooses the applicable CBA grievance procedure, its provisions "take precedence over" the statutory procedure. D.C. Code § 1-616.52(d). An OEA decision is appealable to the D.C. Superior Court, *id*. § 1-606.03(d), while an arbitration award under a CBA grievance procedure is appealable to the PERB, *id*. § 1-605.02(6), and thence to the D.C. Superior Court, *id*. §§ 1-605.02(12), 1-617.13(c). *See generally District of Columbia v. Thompson*, 593 A.2d 621, 626-27 (D.C. 1991). There the D.C. Court of Appeals concluded that the CMPA was

---

[1]Johnson did not appeal the dismissal of her complaint as to the individual District officials.

"intended . . . to provide District employees with their *exclusive* remedies for claims arising out of employer conduct in handling personnel ratings, employee grievances, and adverse actions." *Id*. at 635 (emphasis added).[2]   Accordingly, an employee

---

[2]"Exhaustion of administrative remedies" generally refers to one of two concepts: (1) a nonjurisdictional, judicially created doctrine which "requir[es] parties who seek to challenge agency action to exhaust available administrative remedies before bringing their case to court," *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004); and (2) a jurisdictional doctrine under which the Congress "requires resort to the administrative process as a predicate to judicial review," *id*. The District exhaustion doctrine is jurisdictional as applied by the D.C. Court of Appeals. It requires that an employee exhaust the administrative remedies prescribed in either the CMPA or a CBA before obtaining judicial review in the Superior Court. *See, e.g.*, *Bd. of Trustees, Univ. of the Dist. of Columbia v. Myers*, 652 A.2d 642, 645 (D.C. 1995). Under the prescribed and exclusive CMPA procedure, judicial review occurs generally only in the D.C. courts at the culmination of the administrative appeal or grievance procedure. *See Robinson v. District of Columbia*, 748 A.2d 409, 411 n.4 (D.C. 2000) ("The [CMPA] is jurisdictional and provides the exclusive remedy for almost all claims against public employers, with an opportunity to appeal to the Superior Court."). The procedure's exclusivity and exhaustion requirements do not, however, necessarily foreclose a subsequent suit in local or federal court challenging the adequacy of the process itself. *See Thompson v. District of Columbia*, 428 F.3d 283 (D.C. Cir. 2005) (reversing dismissal of terminated employee's pre-termination due process claim notwithstanding CMPA stripped federal court of jurisdiction over claim that discharge constituted intentional infliction of emotional distress). Without resolving whether this D.C. exhaustion requirement is better understood as jurisdictional or nonjurisdictional in federal court, we have no trouble concluding that it applies here. As we note below, Johnson has waived any challenge to the district court's conclusion that each of her claims is subject to the exhaustion requirement. *See infra* note 8.

grieving an adverse action must exhaust the remedies prescribed either by the statute or, under D.C. Code § 1-616.52(e), by the 1994 CBA.[3] Thus, once Johnson elected to pursue her CBA grievance procedure, she was required to exhaust its remedies by completing arbitration and, if necessary, appealing to the PERB, *id.* art. 30, § 8, ¶ 5. Moreover, when the District refused to arbitrate and the FOP failed to pursue arbitration, Johnson could not circumvent the procedure prescribed in the CBA—namely, arbitration and review by the PERB—by filing a lawsuit. *See Bd. of Trustees, Univ. of the Dist. of Columbia v. Myers*, 652 A.2d 642, 645 (D.C. 1995) ("Generally, a District employee, subject to the [CMPA], or to a CMPA-sanctioned collective bargaining agreement, may not maintain a common law action in court to remedy a grievance against the employer cognizable under CMPA, or under such an agreement, unless the employee has exhausted the administrative procedures provided in that agreement."); *Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C. 2000) (D.C. Superior Court "is not an 'alternative forum' in this scheme, but rather serves as a 'last resort' for reviewing decisions generated by CMPA procedures." (quoting *Stockard v. Moss*, 706 A.2d 561, 565 (D.C. 1997) (quoting *Thompson*, 593 A.2d at 634))). As the D.C. Court of Appeals has made clear, Johnson's sole remedy lay in filing an unfair labor practice complaint with the PERB to obtain relief.

In *Thompson*, for example, the plaintiff, a former District employee, sued the District for defamation and intentional infliction of emotional distress based on memoranda written by her supervisor. Pursuant to the CBA, her union had filed two

---

[3]Section 1-616.52(e) provides: "Matters covered under this subchapter that also fall within the coverage of a negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either pursuant to § 1-606.03, or the negotiated grievance procedure, but not both." Section 1-606.03 sets out the procedure for appealing to the OEA and then to the D.C. Superior Court.

grievances with the District on her behalf but did not take the grievances to arbitration as the CBA provided. The court held that because Thompson's tort claims "clearly f[e]ll within the scope of" the CMPA's provisions governing performance ratings, adverse actions and grievances, the CMPA "preclude[d] litigation of Thompson's [tort] claims, in the first instance, in Superior Court." 593 A.2d at 635. If Thompson was "dissatisfied with [her union's] representation," the proper remedy, the court suggested, was "to file a complaint with PERB, subject to judicial review in Superior Court." *Id*. at 628 n.15. Since *Thompson*, the D.C. Court of Appeals has twice affirmed this view.

First, in *Board of Trustees*, *supra*, the court affirmed the Superior Court's dismissal of the complaint for failure to exhaust. The plaintiff, a professor at the University of the District of Columbia (UDC), alleged breach of contract and tort claims arising from a rescinded promotion after his union failed to take his grievance, filed pursuant to the applicable CBA, to arbitration. The court explained that "under CMPA and the [CBA]—and under prevailing case law—a UDC union employee's only recourse against the UDC Board is arbitration, and that if the union is unwilling to take the case to arbitration, the employee's only remedy at that point is a complaint against the union filed with the [PERB]." *Myers*, 652 A.2d at 646.

The D.C. Court of Appeals addressed the issue again in *Pitt v. District of Columbia Department of Corrections*, 954 A.2d 978 (D.C. 2008), with the same result. The court there affirmed the Superior Court's dismissal of an action for review of an OEA decision. The OEA had dismissed the appeal by a District employee whose union declined to invoke arbitration of the employee's grievance after the District made clear it believed the applicable CBA had expired. The *Pitt* court upheld the OEA's determination that the CBA remained in force and that the employee had failed to exhaust his remedies thereunder.

Citing the just-quoted language from *Myers*, the court explained: "Any obstacle that Mr. Pitt had faced in having his claim reviewed by a 'neutral decision maker' "—which under the CBA was through arbitration—"could only be resolved in a claim against the FOP before the PERB." 954 A.2d at 986. Likewise here, when the District refused to arbitrate Johnson's grievance and the FOP did nothing about it, Johnson's only remedy was to file an unfair labor practice complaint with the PERB. She was not entitled to challenge her removal through an independent legal action, either in the Superior Court or in the district court. Notwithstanding the clear District case law, Johnson offers three arguments why she should not be bound by the District's exhaustion of remedies requirement.

First, Johnson asserts that neither the plain language of the CMPA nor its legislative history requires that an employee pursuing a CBA arbitration procedure seek relief from the PERB and that the district court misconstrued the CMPA in finding such a requirement. The D.C. Court of Appeals, however, definitively foreclosed this argument in *Thompson*, *Myers* and *Pitt*. In each case, the court concluded that a District employee who pursues a grievance pursuant to a CBA procedure must complete the prescribed procedure and therefore must file an unfair labor practice, if necessary, to compel arbitration. Under those cases, Johnson's sole remedy too was to file a complaint with the PERB.

Second, Johnson argues that the CMPA does not require administrative exhaustion if an employee opts for the CBA grievance procedure because the CMPA expressly provides that the CBA grievance procedure preempts the statutory procedure. *See* D.C. Code § 1-616.52(d) ("Any system of grievance resolution or review of adverse actions negotiated between the District and a labor organization shall take precedence over the procedures of this subchapter for employees in a bargaining unit

represented by a labor organization.").[4]  The same preemption clause was in effect when *Thompson*, *Myers* and *Pitt* were decided and yet the D.C. Court of Appeals concluded that the employee in each case was required to seek relief from the PERB.  In any event, there is no conflict here between the CMPA and the CBA, which both prescribe the same procedure. Under the 1994 CBA, as under the CMPA, Johnson was free to choose either the statutory appeal process to the OEA or the 1994 CBA grievance procedure which provided for arbitration subject to appeal to the PERB and only *then*, by either procedure, to court.  *Compare* 1994 CBA art. 24, § 1, ¶ 3 *and* art. 30 § 8, ¶ 5 *with* D.C. Code §§ 1-605.02(12) *and* 1-617.13(c). Under District case law, in either event, she was bound to follow the chosen procedure to its conclusion, including resolving the arbitration impasse that occurred by filing an unfair labor practice complaint with the PERB.  *See Thompson*, 593 A.2d at 628 n.15; *Myers*, 652 A.2d at 646-48; *Pitt*, 954 A.2d at 985-86.

Finally, Johnson argues, as she did before the district court, that seeking relief from the PERB would have been futile.  *See Myers*, 652 A.2d at 645 ("employee may be able to bypass administrative remedies under a collective bargaining agreement by showing that pursuit of these remedies would be futile") (citing *Grover v. St. Louis-S.F. Ry.*, 393 U.S. 324, 330 (1969); *Winter v. Local 639, Int'l Bhd. of Teamsters*, 569 F.2d 146, 149-50 (D.C. Cir. 1977)); *see also Univ. of Dist. of Columbia*

---

[4]Johnson is wrong in asserting that the CMPA "at no point indicates or states that the PERB is a part of the administrative remedy for resolving a District of Columbia employee's grievance pursuant to an adverse action by a District of Columbia Agency."  Br. of Appellant at 16.  The CMPA expressly confers on the PERB "the power to . . . [c]onsider appeals from arbitration awards pursuant to a grievance procedure."  D.C. Code § 1-605.02(6).  The 1994 CBA itself also provides for appeal to the PERB.  1994 CBA art. 30, § 8, ¶ 5.

*Faculty Ass'n v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 163 F.3d 616, 624 (D.C. Cir. 1998) ("Under prevailing D.C. and federal law, an employee may bypass the agreed-upon arbitration procedures only by showing that the 'grievance procedures are unreasonable or that the hostility of union officials makes a fair hearing impossible' or that 'pursuit of [administrative] remedies would be futile.'" (quoting *Jordan v. Wash. Metro. Area Transit Auth.*, 548 A.2d 792, 797 (D.C. 1988); *Myers*, 652 A.2d at 645)) (alteration in original).  This exception, however, requires "a clear and positive showing of futility," *Winter*, 569 F.2d at 149 (internal quotation omitted), giving rise to a " 'certainty of an adverse decision, ' " *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986) (quoting K. Davis, Administrative Law Treatise § 20.07 (1958)).  Johnson has not made such a showing. To support her futility claim, she cites several PERB decisions in which, she asserts, the PERB has expressed its view that it "lack[s] jurisdiction over alleged violations that are strictly contractual in nature," and that this includes, she claims, a violation of the obligation to arbitrate under a CBA.  Br. of Appellant at 21-22.[5]  None of the cases she cites, however, addresses the precise issue here, namely, whether the PERB has

---

[5]*See Butler v. D.C. Dep't of Corr.*, 49 D.C. Reg. 1152, 1154 (PERB Feb. 8, 2002) (failure to pay night differential wages under CBA was "issue of contract interpretation" and therefore not statutory unfair labor practice subject to PERB jurisdiction); *Am. Fed'n of State, County & Mun. Employees, D.C. Council 20, Local 2921 v. D.C. Pub. Sch.*, 42 D.C. Reg. 5685 (PERB Dec. 4, 1992) (District's refusal to provide union with written decision is not statutory unfair labor practice within PERB jurisdiction because providing decision was required by CBA); *Wash. Teachers' Union, Local 6 v. D.C. Pub. Sch.*, 42 D.C. Reg. 5488, 5489 (PERB Nov. 17, 1992) ("alleged unilateral change in established and bargainable terms and conditions of employment" is not statutory unfair labor practice within PERB jurisdiction).

authority to determine whether a union or the District has committed an unfair labor practice by failing to pursue—or submit to—arbitration and, if so, to remediate it. By contrast, the D.C. Court of Appeals has directly addressed this issue, at least as to a union,[6] and has held that the PERB has such authority. The *Myers* court stated unequivocally: "There can be no doubt that PERB has the power, under D.C. Code § 1-605.2(3), to order the union to pursue arbitration of an employee's claim against the employer if PERB concludes that the union's refusal to arbitrate amounted to an unfair labor practice." *Myers*, 652 A.2d at 646;[7] *see also Pitt*, 954 A.2d at 985 (quoting and affirming *Myers*). Given the holdings in these two cases that the PERB has authority to determine that the

---

[6]Although the D.C. Court of Appeals has not addressed the issue, we have no cause to believe that it would not similarly find the PERB has authority to determine whether the District commits an unfair labor practice by failing to arbitrate a grievance pursuant to a CBA, in derogation of its duty to bargain in good faith, *see* D.C. Code § 1-617.04(a)(5) (prohibiting District from "[r]efusing to bargain collectively in good faith with the exclusive representative"). In any event, under *Myers* and *Pitt*, Johnson could have, based on the allegations in her complaint, sought relief from the PERB on the ground the FOP committed an unfair labor practice when it processed her grievance ''in perfunctory fashion." *Myers*, 652 A.2d at 646 (internal quotation omitted); *see Pitt*, 954 A.2d at 985-86 (union's discretion to submit employee's grievance to arbitration is " 'limited by the union's duty to represent all employees fairly in the enforcement of the collective bargaining agreement,' and its 'obligation . . . to investigate a grievance in good faith' " (quoting *Myers*, 652 A.2d at 646)).

[7]Then D.C. Code § 1-605.2(3) (now D.C. Code § 1-605.02(3)) provided "The Board shall have the power to . . . [d]ecide whether unfair labor practices have been committed and issue an appropriate remedial order."

failure to arbitrate under a CBA is an unfair labor practice and to fashion a remedy therefor, it would not have been futile for Johnson to seek a remedy from the PERB.

For the foregoing reasons, we conclude that under District of Columbia law, the district court correctly dismissed Johnson's complaint against the District for failure to exhaust her remedies.[8]   Accordingly, we affirm the judgment of the

---

[8]To the extent Johnson may be entitled to file a separate action asserting her due process claims, *see, e.g.*, *Thompson v. District of Columbia*, 428 F.3d at 287-88, *supra* note 2, she has waived any argument based thereon because she waited until her reply brief, *see* Reply Br. at 9, to challenge the district court's conclusion that all of her claims, including the due process claims, are subject to the exhaustion requirement, *Johnson I*, 368 F. Supp. 2d at 44 ("The fact that [the due process] claim is couched in constitutional terms is of no moment for the exhaustion inquiry."). This challenge comes too late. *See Worldwide Moving & Storage, Inc. v. District of Columbia*, 445 F.3d 422, 427 n.7 (D.C. Cir. 2006). In any event, with regard to her first due process claim—that she did not receive timely notice of the proposal to remove—Johnson concedes that "[t]he grievance arbitration process would . . . address whether Ms. Johnson was illegally terminated pursuant to an untimely and inadequate written pre-termination notice of proposed termination." Reply Br. at 9. With regard to her post-termination claim—based on the District's refusal to arbitrate—Johnson acknowledges that she "is not alleging that the due process procedure she was entitled to pursuant to [the 1994 CBA] was insufficient or inadequate" but that "in violation of her constitutional rights the District violated its contractual obligation to provide the . . . post termination procedural due process rights that she was entitled to pursuant to the CBA." *Id.* As already explained, however, District law provides a process for Johnson to remedy the District's refusal, namely, filing a complaint with the PERB. Thus, like the employees in *Myers* and *Pitt*, Johnson had only to make such a filing to obtain the process she claims was due. She failed to do so.

district court.[9]

*So ordered.*

---

[9]In light of our conclusion that Johnson's sole path to relief lay through filing a complaint with the PERB to compel arbitration, we need not address her argument that the district court abused its discretion when it denied her motions to amend the complaint and to compel arbitration.