WASHINGTON TEACHERS' UNION, LOCAL # 6, AMERICAN FEDERATION OF TEACHERS, AFL–CIO, Appellant,

v.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS, Appellee.

No. 11–CV–1104.

District of Columbia Court of Appeals.

Argued Feb. 27, 2013.

Decided Oct. 10, 2013.

Darryl J. Anderson, with whom Lee W. Jackson and Brenda C. Zwack, Washington, DC, were on the brief, for appellant.

Holly M. Johnson, Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee.

Before BLACKBURNE–RIGSBY and BECKWITH, Associate Judges, and KING, Senior Judge.

Blackburne–Rigsby, Associate Judge:

This case arises out of a dispute between appellant Washington Teachers' Union ("WTU") and the District of Columbia Public Schools ("DCPS" or the "District of Columbia") over whether a grievance challenging the final performance evaluation ratings of hundreds of teachers during the 2009–2010 school year is subject to arbitration. Exercising jurisdiction over the dispute under the District of Columbia Revised Uniform Arbitration Act ("Arbitration Act"), D.C.Code §§ 16–4401 to –4432 (2012 Repl.), the Superior Court partially granted DCPS's motion to stay arbitration to the extent that WTU's grievance seeks to challenge the performance evaluation ratings. As a result, while WTU's grievance alleging that the District of Columbia failed to properly follow the evaluation process can move forward to arbitration, the arbitrator cannot, as a remedy for any violation, rescind or amend the evaluation ratings themselves, although the arbitrator is free to craft other remedies. The primary question before us in WTU's appeal of the stay is whether the Superior Court had jurisdiction over this matter pursuant to the Arbitration Act. WTU argues that the Arbitration Act is preempted by the District of Columbia Comprehensive Merit Personnel Act ("CMPA"), D.C.Code §§ 1–601.01 to –636.03 (2011 Repl.), and therefore the Superior Court was without jurisdiction, and the District of Columbia must submit the question of whether the grievance challenging the performance evaluation ratings is subject to arbitration to the arbitrator to decide in the first instance, subject to appeal to the Public Employees Relations Board and then review by Superior Court. We conclude that the CMPA does not preempt the Arbitration Act as to the type of pre-arbitration relief sought in this case, for which the CMPA provides no alternative. Accordingly, the Superior Court did have jurisdiction to issue the stay. Alternatively, WTU argues that the Superior Court erroneously interpreted the parties' 2007–2012 collective bargaining agreement ("CBA") and should have denied the District of Columbia's motion to stay arbitration. We conclude that the Superior Court properly interpreted the CBA. Accordingly, we affirm.

## I. Background

During the 2009–2010 school year, the District of Columbia implemented a new system for evaluating teachers, the IM-

PACT evaluation instrument. Under this system, approximately 94 teachers were rated "ineffective" and approximately 670 were rated "minimally effective." Almost all of the teachers rated "ineffective" were separated at the end of the school year, and the teachers rated "minimally effective" were subject to termination the following year if their ratings did not improve.

In November 2010, WTU filed a demand for arbitration with the American Arbitration Association ("AAA") "regarding the final annual rating of [certain named members] and all other WTU bargaining unit members who received a 'Minimally Effective' or 'Ineffective' IMPACT rating during the 2009–2010 School Year." WTU claimed that the challenged ratings were in violation of certain provisions of the CBA and the IMPACT performance evaluation process itself. In particular, WTU alleged, among other things, that the District of Columbia had: used "unreliable data in assessing individual performances"; provided "unclear expectations" in the evaluation standards; employed "arbitrary and capricious" methods of scoring; and failed to consider criteria "essential for a fair and objective assessment" of the teachers' performance. WTU requested that the teachers' negative performance evaluations be rescinded, that all records of the ratings be expunged, "and that those ratings be replaced with an IMPACT rating of 'Effective.' "

The District of Columbia requested that the AAA refrain from processing the grievance, arguing, *inter alia*, that WTU was "expressly precluded from [challenging the final annual ratings of its members] under any scenario" and therefore, the dispute was not subject to arbitration. After being informed by the AAA that the arbitration would proceed,[1] the District of Columbia filed a motion with the Superior Court requesting a permanent stay of arbitration pursuant to the Arbitration Act, D.C.Code § 16–4407. The District of Columbia argued that the grievance was not arbitrable because under the CMPA, evaluation instruments, such as IMPACT, are not negotiable for collective bargaining purposes,[2] and therefore "the sections of the [CBA] governing the implementation of IMPACT are not enforceable against DCPS and as such cannot be subject to an arbitration agreement between the parties." The District of Columbia also argued that, even if enforceable, the provisions of the CBA did not permit teachers to challenge their final IMPACT ratings through arbitration. Finally, the District of Columbia argued that a court, not an arbitrator, should decide the issue of arbitrability in the first instance because DCPS had not agreed to submit that question to an arbitrator.[3] WTU filed an oppo-

1. Specifically, the AAA said:
   The Union has met the filing requirements of the rules by the filing of a demand for arbitration providing for administration by the American Arbitration Association under its rules. Accordingly, in the absence of an agreement by the parties or a court order staying this matter, the Association will proceed with its further administration. The parties may wish to raise this issue with the arbitrator at or prior to the hearing.

2. D.C.Code § 1–617.18 provides: "Notwithstanding any other provision of law, rule, or regulation, during fiscal year 2006 and each

succeeding fiscal year the evaluation process and instruments for evaluating District of Columbia Public Schools employees shall be a non-negotiable item for collective bargaining purposes."

3. *See* D.C.Code § 16–4406(b) ("The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."); *Am. Fed'n of Gov't Emps., Local 3721 v. District of Columbia*, 563 A.2d 361, 362 (D.C.1989) ("Under District of Columbia law, when deciding whether to order arbitration, the trial court must determine

sition, arguing that: the issue of arbitrability was one for the arbitrator to decide in the first instance; the grievance was arbitrable under the language of the CBA; and the statutory and regulatory provisions relied upon by the District of Columbia did not preclude arbitration.[4]

After holding a hearing on the matter, the trial court granted, in part, the District of Columbia's motion to permanently stay arbitration, finding that to the extent the grievance sought to challenge final ratings obtained under the IMPACT instrument, it was non-arbitrable; but to the extent the grievance sought to challenge whether DCPS properly adhered to the evaluative process outlined in the IMPACT instrument, the trial court ordered the parties to proceed to arbitration. The trial court first found that the issue of arbitrability was one for the court, rather than the arbitrator, to decide.[5] The trial court then found that, based on the provisions of the CBA, final ratings under IMPACT are not subject to arbitration.[6] The District of Columbia does not challenge the partial denial of its motion, and therefore the only issue before us is whether the trial court properly granted the motion to stay arbitration as to the final IMPACT evaluation judgments.

## II. Legal Framework

This case requires us to address the interaction between two statutes governing arbitration and labor disputes in the District of Columbia: the Arbitration Act and the CMPA. How these statutes interact in the specific context of a pre-arbitration challenge to an arbitrator's authority to decide a labor grievance is an issue that has divided judges of the Superior Court. *Compare District of Columbia Pub. Sch. v. Washington Teachers' Union, Local # 6, Am. Fed'n of Teachers, AFL–CIO,* No. 2011 CA 1161 B (D.C.Super.Ct. Aug. 3, 2011) (Josey–Herring, J.) (decision on review in this case, granting, in part, DCPS's motion to stay arbitration), *and Washington Teachers' Union, Local # 6 v. Michelle Rhee,* No. 2009 CA 7482 B (D.C.Super.Ct. Sept. 7, 2012) (Bartnoff, J.) (enjoining arbitration to the extent that the Union attempts to challenge or seek relief from the reduction-in-force (RIF) through arbitration), *with District of Columbia v. Am. Fed'n of State, Cnty., & Mun. Emps., Dist. Council 20 and Local 2921,* Nos.2010 CA 4943 B, 2010 CA 4944 B, and 2010 CA 9096

as a matter of law whether the parties agreed to arbitrate the particular dispute at issue." (citations omitted)).

4. During a hearing before the Superior Court on the District's motion, citing our decision in *District of Columbia Metropolitan Police Department v. Fraternal Order of Police/Metropolitan Police Department Labor Committee,* 997 A.2d 65 (D.C.2010), WTU also argued that the CMPA preempted the Arbitration Act and the Superior Court was therefore without jurisdiction to provide the relief sought by the District.

5. In support of this finding, the trial court cited *Ballard & Associates, Inc. v. Mangum,* 368 A.2d 548 (D.C.1977). *See id.* at 551 ("Arbitration is predicated upon the consent of the parties to a dispute, and the determination of whether the parties have consented to arbi-

trate is a matter to be determined by the courts on the basis of the contracts between the parties. A further problem for court resolution, assuming agreement to a general arbitration provision, is whether the parties have agreed to arbitrate disputes of a particular kind." (citations omitted)).

6. Specifically, the trial court cited, *inter alia,* § 15.3 of the CBA, which provides that "DCPS's compliance with the evaluation process, and not the evaluation judgment, shall be subject to the grievance and arbitration procedure," and § 15.5 of the CBA, which provides that "Employees maintain their rights to appeal below average or unsatisfactory performance evaluations pursuant to Title 5 of the DCMR, Sections 1306.8–1306.13."

B (D.C.Super.Ct. Mar. 7, 2012) (Zeldon, J.) (denying motions to stay arbitration and dismissing for lack of jurisdiction). Before addressing the issues before us, we will give an overview of the relevant statutory provisions and previous cases considering their interaction with one another.

## A. The Arbitration Act

"Before 1977, common law rules regarding judicial interference in arbitration proceedings applied in the District of Columbia. In 1977, the District of Columbia adopted the Uniform Arbitration Act, which applie[d] to agreements 'made subsequent to its enactment.' " *Thompson v. Lee*, 589 A.2d 406, 410 n. 5 (D.C.1991) (quoting D.C.Code § 16–4318 (1989)) (additional citation omitted).[7] The D.C. Uniform Arbitration Act applied broadly to any "written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties," including "arbitration agreements between employers and employees or between their respective representatives," making such agreements "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." D.C.Code § 16–4301 (1997 Repl.).[8] The Revised Uniform Arbitration Act[9] was adopted by the District of Columbia in 2008 and beginning on July 1, 2009, "governs an agreement to arbitrate whenever made." D.C.Code § 16–4403(e). Of particular relevance here, the Arbitration Act authorizes a party to submit a motion to stay arbitration to the Superior Court on

7. The Uniform Arbitration Act was developed by National Conference of Commissioners on Uniform State Laws for adoption by states. The Uniform Arbitration Act's purpose was "to validate arbitration agreements, make the arbitration process effective, provide necessary safeguards, and provide an efficient procedure when judicial assistance is necessary," with the goal of ensuring "the enforceability of agreements to arbitrate in the face of oftentimes hostile state law." Unif. Arbitration Act (1956) Prefatory Note, 7 U.L.A. (Part 1A) 100 (2009); Unif. Arbitration Act (2000) Prefatory Note, 7 U.L.A. (Part 1A) 2 (2009). The D.C. Act specifies that it "shall be construed so as to effectuate its general purpose of making uniform the law of the District of Columbia and those states which enact it." D.C.Code § 16–4319 (1997 Repl.). Accordingly, we view the decisions of the highest courts of other enacting states as persuasive authority. *See Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 363 (D.C.2005) (citation omitted).

8. Although the analogous provision of the Revised Uniform Arbitration Act does not contain the language regarding agreements between employers or employees, other sections of the Arbitration Act make clear that it still applies to such agreements. *See* D.C.Code § 16–4404(b)(2) ("[A]n employer and a labor organization may waive the right to representation by a lawyer in a labor arbitration.").

9. The Prefatory Note to the Revised Uniform Arbitration Act explains:

> The Uniform Arbitration Act (UAA), promulgated in 1955, has been one of the most successful Acts of the National Conference of Commissioners on Uniform State Laws. Forty-nine jurisdictions have arbitration statutes; 35 of these have adopted the UAA and 14 have adopted substantially similar legislation.... Today arbitration is a primary mechanism favored by courts and parties to resolve disputes in many areas of the law. This growth in arbitration caused the Conference to appoint a Drafting Committee to consider revising the Act in light of the increasing use of arbitration, the greater complexity of many disputes resolved by arbitration, and the developments of the law in this area.
>
> The UAA did not address many issues which arise in modern arbitration cases.... The Revised Uniform Arbitration Act (RUAA) examines all of these issues and provides state legislatures with a more up-to-date statute to resolve disputes through arbitration.

Unif. Arbitration Act (2000) Prefatory Note, 7 U.L.A. (Part 1A) 2–3 (2009).

the basis that an arbitration proceeding has been initiated or threatened but there is no agreement to arbitrate the particular dispute. D.C.Code § 16–4407(b). In response to such a motion, "the court shall proceed summarily to decide the issue" and "[i]f the court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate." *Id.* The question of "whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate" is for a court to decide, D.C.Code § 16–4406(b), but the arbitrator is given the authority under the Act to decide other questions, such as "whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable," D.C.Code § 16–4406(c).[10] This division of authority between the court and the arbitrator stems from the principle that arbitrators derive their authority from the consent of the parties, as expressed through their agreement to arbitrate. Because "a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit," the question of whether a particular dispute is subject to arbitration is reserved for the court to decide. *Am. Fed'n of Gov't Emps., Local 3721 v. District of Columbia,* 563 A.2d 361, 362 (D.C.1989) ("*AFGE, Local 3721* ") (alteration in original) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

### B. The CMPA

Before the CMPA was enacted, the District of Columbia's "personnel system was 'in disarray' and 'chaos'; it was an 'inefficient hodge-podge system [that] ignore[d] the rudimentary merit rules' and 'awkwardly meshed' the District personnel apparatus with the federal personnel system." *District of Columbia v. Thompson,* 593 A.2d 621, 632 (D.C.1991) (quoting COUNCIL OF DISTRICT OF COLUMBIA, DISTRICT OF COLUMBIA COMPREHENSIVE MERIT PERSONNEL ACT OF 1978, COMM. REPORT ON BILL NO. 2–10, 26 (July 5, 1978), ("COMMITTEE REPORT"), *reprinted in* HOUSE COMM. ON THE DIST. OF COLUMBIA, DISTRICT OF COLUMBIA GOVERNMENT COMPREHENSIVE MERIT PERSONNEL ACT OF 1978 AND REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, 96TH CONG., 1ST SESS. 142 (Comm. Print 1979)). In enacting the CMPA in 1979, "the Council intended to create 'a modern, flexible, comprehensive city-wide system of public personnel administration' that would provide 'for the efficient administration of the District of Columbia personnel system and establish impartial and independent administrative procedures for resolving employee grievances.' " *Id.* at 633 (quoting COMMITTEE REPORT, *supra,* at 39, 40).

The CMPA establishes a merit personnel system that includes provisions for: disciplinary grievances and appeals, the establishment of an Office of Employee Appeals, negotiation of collective bargaining agreements, and the establishment of a Public Employees Relations Board

---

**10.** The drafters' comment to these provisions elaborates:

> Subsections (b) and (c) of Section 6 are intended to incorporate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act] that, in the absence of an agreement to the contrary, issues of substantive arbitrability, *i.e.,* whether a dispute is encompassed by an agreement to arbitrate, are for a court to decide and issues of procedural arbitrability, *i.e.,* whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.

Unif. Arbitration Act (2000) § 6 cmt. 2, 7 U.L.A. (Part 1A) 26 (2009).

("PERB" or the "Board"). *See* D.C.Code §§ 1–616.52, –606.01, –617.15, –605.01, respectively. "The CMPA provides that 'an appeal from a removal [or other significant adverse employment action] may be made to the Office of Employee Appeals.'" *Brown v. Watts*, 993 A.2d 529, 533 (D.C. 2010) (alteration in original) (quoting D.C.Code § 1–616.52(b)). Such matters "that also fall within the coverage of a negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either pursuant to the [appeals procedure contained in the CMPA], or the negotiated grievance procedure, but not both." D.C.Code § 1–616.52(e).

In the instant case, the parties entered into a CBA, which will be discussed in more detail later, that included provisions regarding grievances and arbitration. PERB has the authority, *inter alia*, to: "[d]ecide whether unfair labor practices have been committed and issue an appropriate remedial order"; "[c]onsider appeals from arbitration awards pursuant to a grievance procedure," which is "the exclusive method for reviewing the decision of an arbitrator concerning a matter properly subject to the jurisdiction of the Board, notwithstanding any provisions of [the Arbitration Act]"; and to "[s]eek appropriate judicial process to enforce its orders and otherwise carry out its authority. . . ." D.C.Code § 1–605.02. "Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain review of such order in the Superior Court of the District of Columbia by filing a request within 30 days after the final order has been issued." D.C.Code § 1–617.13(c).

### C. Case Law

We have previously had occasion to address the applicability of certain provisions of the Arbitration Act to cases subject to the CMPA. In *District of Columbia Metropolitan Police Department v. Fraternal Order of Police/Metropolitan Police Department Labor Committee*, 997 A.2d 65, 76–77 (D.C.2010) (*"FOP"*), we held that the prevailing party in a CMPA-sanctioned arbitration could seek enforcement of a grievance award only through PERB, and not through the Superior Court under the Arbitration Act. We observed that "[w]e often have recognized that the CMPA provides the exclusive remedy for many (though not all) grievances suffered by District government employees, and that the courts lack subject matter jurisdiction to award relief where the CMPA's remedies are exclusive." *Id.* at 77 (citations omitted). Our holding was supported by several "textual clues" from the CMPA, including "D.C.Code § 1–605.02(16), which states that the Board has the power to '[s]eek appropriate judicial process to enforce its orders and otherwise carry out its authority.'" *Id.* at 79. "Specifically, under the CMPA, '[i]n cases of contumacy by any party or other delay or impediment of any character, the Board may seek any and all such judicial process or relief as it deems necessary to enforce and otherwise carry out its powers, duties and authority.'" *Id.* (quoting D.C.Code § 1–605.02(16)). Our second textual clue, D.C.Code § 1–605.02(6), "states that the Board has the power to decide 'appeals from arbitration awards pursuant to a grievance procedure' and that PERB review is 'the exclusive method for reviewing the decision of an arbitrator concerning a matter properly subject to the jurisdiction of the Board, notwithstanding provisions of §§ 16–4301 to 16–4319,' that is, the provisions of the Arbitration Act." *Id.* We concluded that § 1–605.02(6) suggested "that the [District of Columbia] Council intended the Board, not the courts, to be the forum for proceedings after an award has been en-

tered."[11] *Id.* We were further persuaded by the fact that "FOP could have fought MPD's alleged refusal to comply with the award by filing an unfair labor practice complaint with the Board under [D.C.Code] § 1–605.02(3)." *Id.* at 80. Accordingly, we concluded that, as to the enforcement of arbitration awards, "the CMPA is comprehensive and, therefore, preclusive." *Id.* Persuaded by *FOP's* reasoning, in *District of Columbia v. American Federation of Government Employees, Local 1403,* 19 A.3d 764, 774 (D.C.2011) ("*AFGE*"), we extended our holding in *FOP* to interest arbitration awards and concluded that "the Superior Court lacks the subject-matter jurisdiction to grant relief for a CMPA interest arbitration award under the Arbitration Act."[12]

## III. Discussion

On appeal, WTU argues that the trial court erred in exercising jurisdiction because the Arbitration Act is preempted by the CMPA and DCPS failed to exhaust its CMPA remedies. WTU also argues, in the alternative, that even if the trial court had jurisdiction, it erroneously determined that WTU's grievance was not arbitrable to the extent that the grievance challenged the final evaluations under the IMPACT

instrument. We address each argument in turn.

### A. Statutory Preclusion and Subject Matter Jurisdiction

■ We review *de novo* whether the District of Columbia has a right to invoke the Arbitration Act because it is a purely legal question that calls for interpretation of the CMPA and the Arbitration Act. *AFGE, supra,* 19 A.3d at 771 (citing *FOP, supra,* 997 A.2d at 77; *Arthur v. District of Columbia,* 857 A.2d 473, 490 (D.C. 2004)).

Relying on our decisions in *AFGE* and *FOP,* WTU argues that the CMPA preempts the Arbitration Act and therefore the Superior Court was without jurisdiction to consider the District of Columbia's motion for stay of arbitration. Therefore, according to WTU, the District of Columbia should have been required to follow the procedures set forth in the CMPA as their exclusive remedy, with the result that the District would be required to present the argument that they had not agreed to arbitrate final IMPACT ratings to the arbitrator to decide in the first instance, subject to review by PERB, whose decision would then be reviewable

11. Additionally, we noted that:
 [R]elief for MPD's alleged failure to abide by the Board's order affirming the award was available to FOP under 6–B DCMR § 560.1, which states that "[i]f any [party] fails to comply with the Board's decision within the time period specified in [6–B DCMR § 559.1] [*i.e.,* within 30 days after the Board issues its Decision and Order, unless otherwise specified], the prevailing party may petition the Board to enforce the order."
 *FOP, supra,* 997 A.2d at 79 (alteration in original).

12. Before *FOP* and *AFGE* were decided, we affirmed the trial court's grant of a motion to stay arbitration pursuant to the Uniform Arbitration Act in a case involving a CMPA-sanc-

tioned collective bargaining agreement. *AFGE, Local 3721, supra,* 563 A.2d at 364. However, we did not specifically address preemption and subject matter jurisdiction. Therefore, we must conduct our own inquiry into the jurisdictional question. *See, e.g., Murphy v. McCloud,* 650 A.2d 202, 205 (D.C. 1994) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.... [W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio,* this [c]ourt has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us." (citations and internal quotation marks omitted)).

by the Superior Court. However, there is an important difference between this case and those relied upon by WTU, namely that this case involves *pre-arbitration* relief—an attempt to avoid being forced to arbitrate a dispute that the parties have not agreed to arbitrate—rather than *post-arbitration* relief, e.g., enforcement of an arbitration award. In our view, that difference is dispositive, and we conclude that the CMPA does not preclude the District of Columbia from seeking a pre-arbitration stay under the Arbitration Act. Accordingly, the Superior Court properly exercised jurisdiction in this case.

First, unlike in *AFGE* and *FOP*, there are no "textual clues" in the CMPA to suggest that the Council of the District of Columbia intended the CMPA to be the exclusive means for resolving pre-arbitration disputes. WTU does not suggest otherwise. Rather, WTU argues that "[t]he fact that the CMPA makes no exception or special provision for access to the Superior Court in the circumstances of the labor dispute at bar means that the Superior Court had no jurisdiction to enjoin arbitration in this case." WTU argues that because the CMPA is broadly preemptive, the District of Columbia would have to point to a clear exception to the broad preemptive effect of the CMPA. For support, WTU points to *Feaster v. Vance*, 832 A.2d 1277, 1286 (D.C.2003), where we upheld a preliminary injunction against a strike by school employees issued by the Superior Court. In *Feaster*, we explained that "[t]he CMPA commits the responsibility to resolve allegations of unfair labor

practices to the Public Employee Relations Board." 832 A.2d at 1282 (citing D.C.Code § 1–617.02(b)(2)). The CMPA, D.C.Code § 1–617.04(b)(4), "makes it one of a number of specifically prohibited unfair labor practices for District government employees to engage in a strike or for their union to condone a strike." *Id.* Therefore, in order to uphold the Superior Court's jurisdiction over a matter that would otherwise be committed to the primary jurisdiction of PERB,[13] we found it important "that the CMPA contains not one but two provisions prohibiting strikes by government employees, only one of which bans them as unfair labor practices." *Feaster, supra*, 832 A.2d at 1283. The second provision was vital in *Feaster* because there was another provision directing parties to PERB and "[t]he second provision, a categorical declaration that such strikes are unlawful, is outside the unfair labor practice framework and makes no reference to enforcement through the PERB." *Id.*

Here, on the other hand, the CMPA is simply silent as to pre-arbitration remedies. This is in contrast to post-arbitration relief, such as that at issue in *FOP* and *AFGE*, where the CMPA states that PERB has the power to decide "appeals from arbitration awards pursuant to a grievance procedure," and that such review is "the exclusive method for reviewing the decision of an arbitrator concerning a matter properly subject to the jurisdiction of the Board, notwithstanding any provisions of Chapter 44 of Title 16," that is, the Arbitration Act.[14] D.C.Code § 1–605.02(6). The

13. *See Hawkins v. Hall*, 537 A.2d 571, 574 (D.C.1988) (holding that PERB "has primary jurisdiction to determine whether a particular act or omission constitutes an unfair labor practice under the CMPA").

14. We recognized in *FOP* that the exclusivity provision of § 1–605.02(6) was not "disposi-

tive of the issue before us because that provision concerns appeal, not enforcement." 997 A.2d at 79. However, we observed that "[f]airly read, ... this section does suggest that the Council intended the Board, not the courts, to be the forum for proceedings *after* an award has been entered." *Id.* (emphasis added). We also observed that relief was

fact that the CMPA contains such explicit language undercuts WTU's argument about the CMPA's broad preemptive effect. If the CMPA preempted all relief available under the Arbitration Act, as WTU seems to suggest, the exclusivity provision in § 1–605.02(6) would be "mere surplusage." *See Feaster, supra*, 832 A.2d at 1283 ("We are loath to construe the second provision as mere surplusage. Rather, we must be especially mindful, in interpreting the CMPA as a whole, that each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous." (citations, internal quotation marks, and brackets omitted)). Moreover, § 1–605.02(6) demonstrates that the Council of the District of Columbia knew how to clarify whether certain provisions of the Arbitration Act are available in the public employment context and that, had it intended to preclude other forms of relief under the Arbitration Act, the Council would have done so explicitly.[15] The CMPA does not explicitly preempt pre-arbitration relief under the Arbitration Act.

Second, and also in contrast to *FOP* and *AFGE*, the CMPA does not implicitly preempt the Arbitration Act by providing a remedy that is comparable to the Arbitration Act's provision for a motion to stay arbitration. "When a statute creating new

rights and remedies does not expressly exclude [existing] remedies or declare new remedies exclusive, we decide whether such remedies remain available by looking initially at 'the purpose of [the statute], the entirety of its text, and the structure of review that it establishes.' " *Thompson, supra*, 593 A.2d at 632 (alteration in original) (quoting *United States v. Fausto*, 484 U.S. 439, 444, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (Civil Service Reform Act of 1978 precludes employee's suit under Back Pay Act)). Applying this test, in determining whether the CMPA preempts an existing remedy, we note that our case law has given great consideration to whether the CMPA offers an existing remedy, which in certain instances may be considered more "substantial" than what would otherwise be provided outside the administrative scheme. *See Thompson, supra*, 593 A.2d at 635 (noting that "[t]he remedies available under CMPA are substantial and may, in some respects, afford more complete relief than damage remedies available at common law"). For example, "the CMPA implicitly preempts a common law action only if the employee claims wrongful treatment and injury cognizable as a 'personnel issue' under the [CMPA's] provisions." *King v. Kidd*, 640 A.2d 656, 663 (D.C.1993) (citations omitted) (concluding that the Superior Court had "jurisdiction to hear intentional infliction of emotional

available to FOP under a regulation allowing the prevailing party to "petition the Board to enforce the order." *Id.* (quoting 6–B DCMR § 560.1).

**15.** The dissent suggests that in determining that the CMPA does not preclude the District from seeking a pre-arbitration stay under the Arbitration Act, we will undercut the comprehensive framework created by the Council of the District of Columbia and revive the prior "disjointed, decentralized" system. We disagree. The Council knew how to clearly indicate where it intended the CMPA to preempt

the Arbitration Act, as it did with regard to post-arbitration relief. We are satisfied that allowing for pre-arbitration relief under the Arbitration Act is appropriate and not contrary to the CMPA's general purpose. *See AFGE, supra*, 19 A.3d at 772–74 (determining that the CMPA "provides a comprehensive scheme, because the provision [at issue] establishes PERB's power of *enforcement* under the statute"); *FOP, supra*, 997 A.2d at 79–80 ("[T]he Council intended the Board, not the courts, to be the forum for proceedings *after* an award has been entered.")

distress claims arising out of allegations of government workplace sexual harassment and subsequent retaliation" because such claims were not cognizable as personnel issues).[16] While it is true that our decisions in *AFGE* and *FOP* acknowledged the CMPA's "broad preemptive sweep," [17] our conclusion that the CMPA provided the parties with a remedy was essential to the holdings in those cases. *See AFGE, supra*, 19 A.3d at 773–74 & n. 8 (recognizing "two possible avenues for recourse under the CMPA: petitioning the Board to enforce its order ... and filing an unfair

labor practice complaint" (citing *FOP, supra*, 997 A.2d at 80)).

Under the CMPA, there is no pre-arbitration remedy available to a party who claims that arbitration has been initiated or threatened by the opposing party concerning a dispute that the parties did not agree to arbitrate. Rather, under the CMPA, and as WTU concedes, such a party would be required to submit the question of arbitrability to the arbitrator to decide in the first instance, subject to review by PERB, and then appeal to the Superior Court.[18] As discussed in detail

---

16. *See also Baker v. District of Columbia*, 785 A.2d 696, 698 (D.C.2001) (defamation claim preempted because employee could have filed a grievance under the CMPA); *Stockard v. Moss*, 706 A.2d 561, 566–67 (D.C.1997) (same); *Thompson, supra*, 593 A.2d at 635 (tort claims of defamation and intentional infliction of emotional distress arising out of disputes with employee's supervisor fell within scope of the CMPA and, unlike claims for assault and battery, were preempted); *Newman v. District of Columbia*, 518 A.2d 698, 704–05 (D.C.1986) (concluding that the CMPA's workers' compensation provision preempts an employee's common law right of recovery "only ... if the statute provides redress for the wrongs they assert").

17. *See AFGE, supra*, 19 A.3d at 765 ("We hold that the CMPA governs all collective bargaining disputes involving District municipal employees and, thus, preempts any attempt to use the Arbitration Act to *confirm* an arbitration award involving municipal employees." (emphasis added)); *FOP, supra*, 997 A.2d at 80 (noting that because the award FOP sought to confirm was "the product of comprehensive CMPA-established grievance and collective bargaining procedures, ... it is natural for the CMPA to provide the avenue for its enforcement; a contrary reading would revive the 'disjointed, decentralized personnel system' that the CMPA was 'designed to replace'" (quoting *Thompson, supra*, 593 A.2d at 632)).

18. PERB's "long held position [is] that matters of arbitrability are initially determined by the arbitrator." *Am. Fed'n of Gov't Emps., Local 2725 v. District of Columbia Dep't of*

*Consumer & Regulatory Affairs*, 59 D.C.Reg. 5041, 5044, Opinion No. 969, PERB Case No. 06–U–43 (2009) (citing *Am. Fed'n of State, Cnty. & Mun. Emps., Dist. Council 20, AFL–CIO v. District of Columbia Gen. Hosp. & the District of Columbia Office of Labor Relations & Collective Bargaining*, 36 D.C.Reg. 7101, Slip Opinion No. 227 at p. 5, PERB Case No. 88–U–29 (1989)). Accordingly, PERB has been willing to consider the filing of a grievance addressing a non-arbitrable matter to be an unfair labor practice in only the most egregious circumstances, such as where the filing party was "aware that it did not have a right to demand arbitration when it filed its arbitration request." *District of Columbia Metro. Police Dep't v. Fraternal Order of Police*, 59 D.C.Reg. 6956, 6962, Opinion No. 1224, PERB Case No. 09–U–48 (2011). As a result, in the vast majority of cases involving a contractual question over whether a particular dispute is encompassed by a CBA's arbitration clause, PERB would direct the parties to address their arguments to the arbitrator in the first instance, subject to review by PERB, D.C.Code § 1–605.02(6), and then appeal to the Superior Court, D.C.Code § 1–617.13. Indeed, in this case, the District submitted a motion for injunctive relief to PERB, which was denied. PERB observed that "[c]omplainants have not introduced evidence of allegations that meet the criteria for granting a motion for preliminary relief," namely that: "(1) the conduct alleged to be in violation [of] D.C.Code § 1–617.04 was clear-cut and flagrant; or (2) the effect of the alleged unfair labor practice is widespread; or (3) the Board's processes are being interfered with and the Board's ultimate remedy may be

below, requiring a party to submit the question of arbitrability to an arbitrator to decide in the first instance, when it is the very authority of the arbitrator to hear the dispute that is at issue, is not comparable to a pre-arbitration decision by a judge, as provided for in the Arbitration Act. Therefore, for the reasons that follow, the CMPA does not preempt the provision of the Arbitration Act providing for a pre-arbitration stay.

When, as here, the parties have entered into a CBA that includes an arbitration clause, their obligation to submit to arbitration derives from and is defined by the CBA. As we have previously observed, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit." *AFGE, Local 3721, supra,* 563 A.2d at 362 (alteration in original) (quoting *Warrior & Gulf Navigation Co., supra,* 363 U.S. at 582, 80 S.Ct. 1347). "This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648–49, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citation omitted). Accordingly, "the question of arbitrability—whether a collective-bargaining agreement

creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *Id.* at 649, 106 S.Ct. 1415. This is the recognized rule in the District of Columbia, both under our case law and as preserved in the Arbitration Act. *See, e.g.,* D.C.Code § 16–4406(b) ("The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."); *AFGE, Local 3721, supra,* 563 A.2d at 362 ("Under District of Columbia law, when deciding whether to order arbitration, the trial court must determine as a matter of law whether the parties agreed to arbitrate the particular dispute at issue." (citations omitted)). "[W]here a party challenges the arbitrability of a dispute, it is the very authority of the arbitrator to decide that is at issue, and the presumption is that the court must first settle the basic contractual question, unless the parties 'clearly and unmistakably provide otherwise.'" *Woodland Ltd. P'ship v. Wulff,* 868 A.2d 860, 864 (D.C.2005) (quoting *AT & T Techs., supra,* 475 U.S. at 649, 106 S.Ct. 1415) (citing *Grad v. Wetherholt Galleries,* 660 A.2d 903, 908 (D.C. 1995)).[19] Here, the parties made no such provision in the CBA. Therefore, unless the CMPA implicitly preempts the pre-arbitration relief afforded by the Arbitration Act, i.e., a motion to stay arbitration,

---

clearly inadequate." The possibility of filing an unfair labor practice complaint in the most egregious cases does not substitute for the ability to avoid, through a motion to stay arbitration pursuant to the Arbitration Act, arbitration of disputes that the parties have not agreed to submit to an arbitrator. See discussion *infra.*

19. In *AFGE,* we distinguished *Grad* on the basis that it arose out of a written arbitration agreement, rather than interest arbitration pursuant to the CMPA. 19 A.3d at 770; *see also* D.C.Code § 1–605.02(4) (giving PERB the power to "[r]esolve bargaining impasses through fact-finding, final and binding arbi-

tration, or other methods agreed upon by the parties as approved by the Board and to remand disputes if it believes further negotiations are desirable"). Here, the District's obligation to arbitrate arises from the written CBA, unlike in *AFGE* where the interest arbitration was required by the CMPA itself. As we noted in *AFGE,* "[t]hat distinction is not merely factual." 19 A.3d at 770. Therefore, unlike in *AFGE,* here we are guided by *Grad* and other decisions involving written agreements because the parties' obligation to submit to arbitration is governed by the terms of the written CBA.

the Superior Court was the appropriate venue for the District of Columbia's challenge to the arbitrability of WTU's grievance.

■ The relief available under the CMPA—submitting the question of arbitratibility to the arbitrator subject to later review by PERB and the Superior Court—is not comparable to the pre-arbitration relief provided in the Arbitration Act. If forced to proceed with arbitration of a non-arbitrable matter, the District of Columbia, like any party in its situation, would be required to expend resources on those proceedings.[20] The Arbitration Act recognizes the importance of both pre- and post-arbitration remedies by providing for both. *See* D.C.Code § 16–4407(b) & (c) (providing for a motion to stay arbitration where it is alleged that "an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate"); D.C.Code § 16–4423(a) (providing for a motion to vacate an award where, among other reasons, "[a]n arbitra-

tor exceeded the arbitrator's powers" or "[t]here was no agreement to arbitrate").[21] Had the Council of the District of Columbia intended post-arbitration appeal, as provided in the CMPA, to be the sole remedy available notwithstanding the Arbitration Act and the agreement-oriented justification for arbitration, it would have made such intent clear. *See Nat'l Org. for Women v. Mut. of Omaha Ins. Co.*, 531 A.2d 274, 276 (D.C.1987) ("If the Council had intended to effect such a dramatic change . . .; it is reasonable to assume that there would have been at least some specific reference to it in the language of the Act or, at least, within its legislative history." (citations omitted)).[22] Furthermore, the question at issue in a motion to stay arbitration—whether an agreement to arbitrate exists and encompasses the dispute at hand—is a matter of contract interpretation that courts are well-equipped to handle, rather than a matter of labor relations that would benefit from the unique expertise of an arbitrator and PERB. *See*

20. Although the CBA requires the fees and expenses of the arbitrator to be borne by the non-prevailing party, the District of Columbia would still be required to devote staff time and resources to the arbitration proceedings. The Office of the Attorney General for the District of Columbia explained during oral argument that bifurcation of arbitration proceedings, so that any question of arbitrability is considered before proceeding with arbitration of the merits of a dispute, is not a guaranteed procedure, but rather must be agreed to by both parties and the arbitrator. Therefore, absent the availability of a pre-arbitration stay under the Arbitration Act, the District of Columbia may be required to expend resources arbitrating the merits of a dispute, only to find out later, from the arbitrator or on appeal to PERB or the Superior Court, that the dispute was not in fact arbitrable. Of course, "the unnecessary expenditure of public moneys that will not be recoverable should be avoided." *District of Columbia v. Greene*, 806 A.2d 216, 223 (D.C.2002). In the absence of some contrary indication in the text of the CMPA itself, we find it unlikely that the

Council of the District of Columbia would have intended such a result.

For these very reasons, we disagree with the dissent's suggestion that once the question of arbitrability is appropriately decided by an arbitrator, the CMPA offers the District comparable relief by allowing for appeals of the arbitrator's conclusion to PERB and judicial review of PERB's decision before a court. *Washington Teachers' Union*, No. 11–CV–1104, at 45.

21. The CMPA provides comparable post-arbitration relief, D.C.Code § 1–605.02(6), and is therefore the appropriate avenue for a party wishing to challenge, after arbitration has been conducted, the arbitrator's authority to decide a matter. There is no corollary under the CMPA for the Arbitration Act's pre-arbitration motion to stay.

22. As already discussed, the Council knew how to indicate such an intent, as it did so with respect to post-arbitration relief. *See* D.C.Code § 1–605.02(6).

*2200 M Street LLC v. Mackell,* 940 A.2d 143, 152 (D.C.2007) ("Determining the scope of an agreement to arbitrate, like other issues of contract interpretation, is one that this court undertakes *de novo.*" (citations omitted)); *Feaster, supra,* 832 A.2d at 1284 ("[T]he issue before the Superior Court in an action for injunctive relief is comparatively narrow—the court is not called upon in such an action to intrude on the Board's area of labor relations expertise...." (citation omitted)).[23]   Because the CMPA neither expresses an intent to preclude a motion to stay arbitration under D.C.Code § 16–4407 nor provides a comparable remedy, we conclude that this portion of the Arbitration Act is not preempted by the CMPA and the Superior Court had jurisdiction to grant the relief sought by the District of Columbia.[24]   It bears repeating that we are only called upon to determine the default position where the parties' CBA is silent as to who should decide issues of arbitrability.[25] Like other contracting parties, District of Columbia employees and management are free to provide that issues of arbitrability are to be decided by the arbitrator in the first instance, but they must express such intent clearly and unmistakably in their collective bargaining agreement. *E.g.,*

*Woodland Ltd. P'ship, supra,* 868 A.2d at 864.

Finally, we are unpersuaded by WTU's argument that a holding permitting parties to seek pre-arbitration relief in Superior Court, pursuant to the Arbitration Act, "would create conflicting alternative forums where in the Superior Court, an agency might obtain an order enjoining arbitration while, before PERB, a union representing that agency's employees might obtain an unfair labor practice ruling and order to arbitrate."  For support, WTU points to our observation in *FOP* that PERB has repeatedly held that " 'when a party simply refuses or fails to implement an award *or negotiated agreement* where no dispute exists over its terms, such conduct constitutes a failure to bargain in good faith and, thereby, an unfair labor practice under the CMPA.' " *FOP, supra,* 997 A.2d at 79–80 (emphasis added by WTU) (quoting *Int'l Bhd. of Police Officers, Local 446, Nat'l Ass'n of Gov't Emps. v. District of Columbia,* 47 D.C.Reg. 7184, 7187, Slip Op. No. 622, PERB Case No. 99–U–30 (2000) ("*International Brotherhood*")).  WTU overlooks that PERB has held that it is an unfair labor practice to fail to implement a negotiated agreement only *where no dispute*

---

**23.** The dissent states that allowing a trial court to determine the contractual question of arbitrability will "now require trial courts to draw subtle distinctions between what the parties did and did not agree to arbitrate." However, we do not share this concern because trial judges are equipped to resolve the question of arbitrability—as did the trial judge in this case—reading the CBA to require the parties to proceed to arbitration on the evaluative process question, but finding the final ratings non-arbitrable under the IMPACT system.

**24.** Accordingly, the District of Columbia was not required to exhaust remedies under the CMPA because there were no such available pre-arbitration remedies to exhaust.  Judicial

economy is not served, and exhaustion is not required, where a litigant would be required "to go through obviously useless motions in order to preserve [his or her] rights." *Barnett v. District of Columbia Dep't of Emp't Servs.,* 491 A.2d 1156, 1162 (D.C.1985) (citations and internal quotation marks omitted).

**25.** It bears noting that although the dissent highlights the trial judge's decision, that as a matter of policy, certain line drawing is "best left to arbitrators picked by both parties and by PERB, which has expertise in this complex area of labor law, rather than to various trial judges," nothing in our decision precludes parties from contracting in their CBA for the question of arbitrability to be decided by the arbitrator.

*exists over its terms.* Where, as here, one party has filed an arbitration demand covering a matter that the other party contends is not arbitrable, there is clearly a dispute over the meaning of the parties' agreement,[26] and the question is who should resolve that dispute—a court or an arbitrator.[27] We have now resolved that any initial dispute over whether a demand for arbitration is encompassed by the parties' arbitration agreement should be answered by the Superior Court if a party seeks to stay arbitration and the parties'

agreement does not clearly direct that dispute to the arbitrator. In the event of simultaneous proceedings before the Superior Court, in a motion to stay arbitration, and PERB, in an unfair labor complaint alleging a failure to submit to arbitration, parties can easily avoid any conflicting results by keeping PERB informed of proceedings in Superior Court.[28] Therefore, our holding does not, as WTU contends, create the "alternative forum" that we rejected in *AFGE* and *FOP*.[29] Rather, con-

---

**26.** *International Brotherhood,* the case relied upon by WTU, illustrates this point. In *International Brotherhood,* which involved the Public Benefit Corporation's failure to implement an arbitration award, PERB clarified "that the failure to implement an arbitrator's award does not constitute an unfair labor practice when interpretation of the award is in dispute by the parties." 47 D.C.Reg. at 7187 (citation omitted). PERB determined that there was a genuine dispute over the calculation of the grievant's back pay and therefore failure to implement the back pay provision of the award did not constitute a violation of the duty to bargain in good faith. *Id.* However, PERB found that "failure to implement the other award provisions over which no dispute exists," did constitute a failure to bargain in good faith and therefore an unfair labor practice. *Id.* at 7188 (citation omitted).

**27.** WTU also argues that based on PERB's "long held position that matters of arbitrability are initially determined by the arbitrator," there is "no question that PERB would order DCPS to submit the issue of arbitrability to the arbitrator in the first instance." It is true that PERB has held that questions of arbitrability must be submitted to the arbitrator, rather than PERB, in the first instance. See *supra* note 17. However, this only supports our determination that the CMPA does not provide a remedy comparable to a motion to stay arbitration pursuant to the Arbitration Act.

**28.** We need not address in this case the extent to which a bad faith filing in Superior Court or a refusal to proceed with arbitration after the Superior Court has ruled might constitute an unfair labor practice.

**29.** Furthermore, we note that our holding is not inconsistent with *Johnson v. District of Columbia,* 384 U.S.App.D.C. 153, 552 F.3d 806 (2008), another case relied upon by WTU. In *Johnson,* the District of Columbia Circuit held that an employee who had pursued a grievance pursuant to a CBA and was later dissatisfied with her union's handling of the grievance was required to exhaust the CBA's remedies by following the grievance procedure to its conclusion, including, if necessary, the filing of an unfair labor practice complaint with PERB to compel arbitration, before seeking judicial review. 384 U.S.App. D.C. at 154–59, 552 F.3d at 807–12. Two features of the CMPA's scheme were important to the court's decision. First, the CMPA provides that an employee may "appeal from a removal ... to the Office of Employee Appeals" (OEA), D.C.Code § 1–616.52(b), or use any grievance procedure set out in an applicable CBA, "but not both," D.C.Code § 1–616.52(e). *Id.* at 157, 552 F.3d at 810. Second, PERB has the authority to determine that a union has committed an unfair labor practice by failing to pursue arbitration on behalf of an employee-member and has the power under D.C.Code § 1–605.02(3) to order the union to pursue arbitration of an employee's claim. *Id.* at 160, 552 F.3d at 813 (citing *Bd. of Trs., Univ. of the District of Columbia v. Myers,* 652 A.2d 642, 646 (D.C.1995); *Pitt v. District of Columbia Dep't of Corrs.,* 954 A.2d 978, 985 (D.C.2008)). Our holding—that the CMPA does not preclude a party from submitting a motion to stay arbitration to the Superior Court pursuant to the Arbitration Act— does not conflict with the holding or reasoning of *Johnson.* First, although an employee is bound by his or her decision to pursue a claim through a CBA grievance procedure,

sistent with the Arbitration Act, the Superior Court's role is limited to preventing a party from being forced to arbitrate a controversy that is clearly not encompassed by the parties' arbitration agreement. *See* D.C.Code §§ 16–4406(b), –4407.[30]

### B. Arbitrability

■■■■ Having concluded that the Superior Court properly exercised jurisdiction in this case, we now address WTU's argument that the trial judge erred by granting DCPS's motion to stay arbitration to the extent that WTU's grievance challenged the final evaluations under the IMPACT instrument. "Arbitrability—whether there was an agreement to arbitrate a particular dispute—is a question of law that we review *de novo.*" *Giron v. Dodds,*

35 A.3d 433, 437 (D.C.2012) (citation omitted). "Where there is an arbitration clause in a contract, there is a presumption of arbitrability concerning the dispute at issue, [and] any ambiguity as to whether the arbitration provision covers a dispute is resolved in favor of arbitration." *AFGE, Local 3721, supra,* 563 A.2d at 362 (citations and internal quotation marks omitted). "On the other hand, if the court has 'positive assurance' that the parties did not intend the dispute *sub judice* to be resolved through arbitration, then the court may not compel arbitration, because to do so would be contrary to the parties' agreement." *2200 M St. LLC, supra,* 940 A.2d at 152 (citations omitted). Therefore, the presumption in favor of arbitration becomes operative only where the court must interpret an ambiguous clause in the

rather than through OEA, we do not think the Council intended for the District to be similarly bound to follow the employee's elected remedy where, as here, the District asserts that the arbitration demand is not encompassed by the CBA's arbitration clause. Second, although PERB has the power to order parties to arbitration in response to an unfair labor practice complaint, PERB does not clearly have the authority to grant the type of relief requested in a pre-arbitration motion to stay. See *supra* note 17.

One related point merits brief discussion. The Arbitration Act contains a provision parallel to the one at issue here, D.C.Code § 16–4407(a), which allows a party to go to court to compel arbitration. Although *Myers* and *Pitt* may be read to suggest that the exclusivity of the CMPA requires a party to first file a complaint with PERB in an attempt to compel arbitration through the unfair labor practices procedure before seeking relief under the motion-to-compel provision of the Arbitration Act, our cases have not squarely addressed the CMPA's preemption of the Arbitration Act's pre-arbitration remedies in D.C.Code § 16–4407(a), the motion-to-compel provision, and (b), the motion-to-stay provision here at issue. See *Myers, supra,* 652 A.2d at 645–48; *Pitt, supra,* 954 A.2d at 985–86. As a result, those cases have not addressed in

depth the adequacy of the administrative unfair labor practices procedure in vindicating the contractual rights of the parties. Additionally, although *Johnson* arguably implies that an employee's right to file a motion to compel arbitration in Superior Court is preempted by CMPA-sanctioned CBA procedures, 384 U.S.App.D.C. at 156–60, 552 F.3d at 809–14, *Johnson* is not binding on us, *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971) ("As this court on February 1, 1971 became the highest court of the District of Columbia, no longer subject to review by the United States Court of Appeals, we are not bound by the decisions of the United States Court of Appeals rendered after that date."). Furthermore, in a motion to stay, unlike a motion to compel, the party filing the motion contests the very authority of the arbitrator, and by extension PERB, to resolve the dispute. As a result, the PERB process may be better suited to a situation involving an attempt to compel, rather than avoid, arbitration. In any event, this case only requires us to resolve the preemption question as to a motion to stay under the Arbitration Act.

30. Furthermore, this procedure should not result in unnecessary delay of arbitration proceedings. D.C.Code § 16–4407(b) ("[T]he court shall proceed summarily to decide the issue.").

agreement. *Id.* Additionally, even where the arbitration clause itself is broad, an "express provision excluding a particular grievance from arbitration" can render application of the presumption in favor of arbitration unnecessary. *See Warrior & Gulf Navigation Co., supra,* 363 U.S. at 584–85, 80 S.Ct. 1347.

Several provisions of the parties' CBA are relevant here. Article 6 sets forth the grievance procedure, which proceeds in three steps. The first step provides for a three-stage mediation procedure. If the matter is not resolved at step one, the grievance advances to step two, which involves a meeting between the Chancellor and WTU representatives. Finally, step three provides for arbitration. Article 6 specifies that the arbitrator "shall have no power to delete or modify in any way any of the provisions of [the CBA]" and that "[n]o provision of [the CBA], which is a matter of policy, shall be subject to arbitration." Article 15 addresses teacher evaluation and provides:

15.3 DCPS's compliance with the evaluation process, and not the evaluation judgment, shall be subject to the grievance and arbitration procedure.

15.4 The standard for separation under the evaluation process shall be "just cause," which shall be defined as adherence to the evaluation *process* only.

15.5 Employees maintain their rights to appeal below average or unsatisfactory performance evaluations pursuant to Title 5 of the DCMR, Sections 1306.8–1306.13.

15.6 If a Teacher decides to challenge an alleged violation of the evaluation process, s/he has the option to request mediation at Step 1 or to commence a grievance at Step 2. If the alleged violation occurs in connection with an evaluation that results in termination, the hearing at Step 2 shall receive priority over all other pending grievances except those related to termination.

The trial court first determined that the parties had an enforceable agreement to arbitrate, which DCPS did not contest. Next, the trial court examined whether the underlying dispute fell within the scope of the arbitration agreement. The court concluded that the "judgment," i.e. the "actual rating," is not arbitrable because § 15.3 "clearly indicates" that "DCPS's compliance with the evaluation process, and not the evaluation judgment, shall be subject to the grievance and arbitration procedure." However, the trial court concluded that "whether the process was complied with" is arbitrable. Finally, the court ruled that a party wishing to challenge the final evaluation judgment should follow the process for appeal to the Superintendent and the Office of Employee Appeals set out in Title 5 of the District of Columbia Municipal Regulations, as referenced in § 15.5 of the CBA.

WTU argues that the CBA is susceptible of an interpretation that covers the entire dispute and therefore the trial court, in accordance with the presumption in favor of arbitrability, should have denied DCPS's motion to stay. Specifically, WTU argues that reading §§ 15.3 through 15.6 together, "the correct reading is that, when an evaluation is issued without following the IMPACT procedures correctly, that evaluation may be challenged through the grievance-arbitration procedure," and "[a]s a remedy, the evaluation obtained in violation of the IMPACT process should be rescinded." WTU argues that "[t]his is not a challenge to the reviewing official's 'evaluation judgment' within the meaning of [§ ] 15.3 because the correctness of that

judgment is impossible to determine given the failure to follow the process correctly."[31] WTU also disagrees with the trial court's interpretation of § 15.5 and argues that the purpose of that section "is that in those cases where the evaluation process was followed correctly, employees may nevertheless challenge the judgment of the evaluating official by appealing to OEA."[32] The District of Columbia argues that § 15.3 of the CBA is unambiguous and renders IMPACT ratings non-arbitrable.

WTU is correct that alleged violations of the IMPACT process are an appropriate subject for grievance and arbitration as indicated by §§ 6.5.15, 15.3, and 15.6 of the CBA. However, we are not convinced by WTU's argument that the CBA authorizes an arbitrator to rescind or amend an evaluation judgment as a remedy for DCPS's violation of the evaluation process. Rather, we agree with the trial court and the District of Columbia that while an arbitrator can consider whether DCPS complied with the IMPACT process and, if a violation is found, can craft a remedy, the arbitrator cannot rescind or amend a final evaluation, i.e., an "evaluation judgment." To allow an arbitrator to rescind or amend the evaluation, as WTU requested in its grievance, would result in the evaluation judgment being "subject to" the grievance and arbitration procedure in contravention of § 15.3. As Article 6 makes clear, while the arbitrator is authorized to "make appropriate awards," the arbitrator "shall

have no power to delete or modify in any way any of the provisions of [the CBA]."

In excluding evaluation judgments from the arbitration agreement, the CBA does not distinguish between the grounds for arbitration and the remedies available. Section 15.3 plainly states that the "evaluation judgment" is not "subject to" arbitration, leaving no room for rescission or amendment of the evaluation judgment on any grounds. Likewise, § 15.5 fails to make a distinction between the ground for the challenge to the evaluation and the remedies available. Rather, it allows employees to appeal "below average or unsatisfactory performance evaluations" to OEA, regardless of the ground for the appeal. Thus, the unambiguous exclusion in § 15.3 precludes the application of the presumption favoring arbitrability, and the trial court correctly granted the District of Columbia's motion to the extent that WTU's grievance sought to challenge final evaluations obtained under the IMPACT instrument. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 130 S.Ct. 2847, 2859–60, 177 L.Ed.2d 567 (2010) ("We have applied the presumption favoring arbitration, in [Federal Arbitration Act] and in labor cases, only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate . . . [is] best construed to encompass the dispute.").[33]

---

**31.** WTU contends that § 6.5.15 of the CBA supports its interpretation. Section 6.5.15 provides: "At the discretion of WTU, any grievance concerning discipline, and/or discharge (including discharges that are evaluation related to violations of the evaluation process), may be initiated at Step 2 of this grievance procedure."

**32.** WTU does not explain what the purpose of an appeal to OEA would be in a case where there was no allegation that the evaluation

process was not followed in light of the fact that, according to § 15.4, the standard for an employee's separation under the evaluation process is "just cause," which is defined as "adherence to the evaluation *process* only."

**33.** *See also Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 922 (D.C.1992) ("The District has a statute similar to the United States Arbitration Act, and we find the federal courts' application of the federal statute in-

In sum, while the CBA contains an enforceable arbitration provision, it also contains an express provision, § 15.3, excluding evaluation judgments from the grievance and arbitration procedure. This provision is unambiguous, and therefore. the presumption in favor of arbitration does not apply. *See 2200 M St. LLC, supra,* 940 A.2d at 152. Thus, as the trial court concluded, it can be said with "positive assurance" that the parties did not intend challenges to the evaluation judgments to be resolved through arbitration. *Id.* Therefore, the trial court properly granted the motion to stay to the extent that WTU's grievance sought to challenge the final evaluation judgments.

## IV. Conclusion

For the foregoing reasons, we hold that the CMPA does not preempt the provision of the Arbitration Act that provides for a motion to stay arbitration. Because we agree with the trial judge that the parties did not agree to submit evaluation judgments to arbitration, we affirm the order granting, in part, the District of Columbia's motion to stay arbitration.

*So ordered.*

Opinion for the court by Associate Judge BLACKBURNE–RIGSBY.

Dissenting opinion by Senior Judge KING.

KING, Senior Judge, dissenting:

In earlier decisions, we have held that the CMPA is "comprehensive and therefore preclusive." *District of Columbia Metro. Police Dep't v. Fraternal Order of Police/Metro. Police Dep't Labor Comm. ("FOP ")*, 997 A.2d 65, 80 (D.C.2010). Because it "governs all disputes involving DC municipal employees," it "forecloses appli-

cability of the [RUAA] to collective bargaining agreements between the District and municipal employees." *District of Columbia v. Am. Fed'n of Gov't Emps., Local 1403 ("AFGE, Local 1403 ")*, 19 A.3d 764, 765 & 770 (D.C.2011). Here, the court cabins these decisions, holding that CMPA's preemption of the RUAA is only partial. Thus while the majority holds that the CMPA precludes parties from going to court to confirm or enforce grievance arbitration awards, *FOP* at 76–77, and interest arbitration awards, *AFGE, Local 1403* at 774, it does not deprive the Superior Court of jurisdiction to decide motions to stay arbitrations sought under collective bargaining agreements between public employee unions and the District.

This decision undercuts one of the Council's intentions in enacting the CMPA, which was to create a "comprehensive, city-wide system of public personnel administration," *FOP* at 78, and threatens to revive the "disjointed, decentralized personnel system" that the CMPA was "designed to replace." *Id.* at 80. The majority's decision will now require trial courts to draw subtle distinctions between what the parties did and did not agree to arbitrate. Here, for instance, the trial court had to determine exactly which aspects of the union's dispute over the IMPACT teacher evaluation system were covered under the collective bargaining agreement. It ruled that the union's challenge to the procedures DCPS followed to evaluate teachers under IMPACT could proceed to arbitration, but its challenge to the final ratings DCPS reached using these procedures could not. This decision allows parties to split complex disputes between two forums if the Superior Court is empowered to stay arbitration on some aspects of the dispute but not others. As Judge Zeldon

structive as to how we should construe our

own." (citations omitted)).

noted in her decision in *District of Columbia v. Am. Fed'n of State, County, & Mun. Emps., Local 2921* ("AFSCME"),[34]

> As a matter of policy, it makes sense to require the District and the union to attempt to resolve their differences about the scope of collective bargaining and the validity of a contract provision on [reductions in force] within the framework of the CMPA. The parties seem to be disputing where the line can and should be drawn between the District's rights to identify positions for abolishment and the Union's collective bargaining rights, if any, once the District decides to exercise its power to select employees for a reduction in force. Such attempted line drawing is best left to arbitrators picked by both parties and by PERB, which has expertise in this complex area of labor law, rather than to various trial judges managing busy dockets. *AFSCME*, No. 2010 CA 004943 B, slip op. at 8 (D.C.Super.Ct. March 7, 2012).

As PERB has long recognized, "arbitrability is an initial question of the arbitrator to decide," and leaving that question to the arbitrator promotes the most consistent results. If the District disagrees with the arbitrator's conclusion, it may appeal to PERB and seek judicial review of PERB's decision in the courts. *See, e.g., District of Columbia Pub. Emp. Relations Bd. v. Fraternal Order of Police/Metro. Police Dep't Labor Comm.*, 987 A.2d 1205 (D.C. 2010).

Finally, even though our statutes make the District's evaluation process and instruments of evaluation of DCPS employees "non-negotiable for collective bargaining purposes," D.C.Code § 1–617.18, PERB has ruled that similar statutory

provisions giving the District non-negotiable rights to identify positions for abolishment "do not limit the rights of employees and/or unions to arbitrate issues, which may arise during a [reduction in force]" AFGE, Local 631, PERB Case No. 09–U–57, Op. No. 1264, at 8 (D.C.P.E.R.B. Feb. 23, 2012). According to PERB, "the [RIF] statute did not expressly exclude matters, covered by a[CBA], from the grievance and arbitration provisions of a binding [CBA]." *Id.* If every dispute arising out a RIF is excluded from the grievance and arbitration provisions of a binding CBA, much of the CBA would be rendered ineffective.

For these reasons, I respectfully dissent.

---

**34.** Oral argument in AFSCME was heard the same day as oral argument in this case. It is awaiting decision.